IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,395

In the Matter of BRANDY L. SUTTON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 1, 2017. Three-year suspension; respondent may apply for reinstatement after six months, subject to terms and conditions specified.

*Kimberly Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the brief for the petitioner.

*Daniel F. Church*, of Morrow Willnauer Church, L.L.C., of Kansas City, Missouri, argued the cause, and *Peggy A. Wilson*, of the same firm, was with him on the briefs for respondent. *Brandy L. Sutton*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Brandy L. Sutton, of Lawrence, an attorney admitted to the practice of law in Kansas in 1998.

On April 21, 2016, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC); on April 29, 2016, a corrected formal complaint was filed; and on June 16, 2016, an amended formal complaint was filed. After the hearing panel granted the respondent's motion for an extension of time to file an answer to the formal complaint, the respondent filed an answer on June 13, 2016; an answer to the amended formal complaint was filed on July 6, 2016. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 1, 2016, where the respondent was personally present and represented by counsel. The hearing panel

1

determined that the respondent violated KRPC 8.4(c) (2017 Kan. S. Ct. R. 379) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"10.     The respondent is the sole owner of the law firm, Pendleton & Sutton. The respondent offered a Simple Individual Retirement Account plan as a benefit to her employees. If an employee agreed to defer up to 3% of the employee's salary, the law firm would match the amount contributed.

"11.     For the employees that signed up for the Simple IRA plan, the respondent withheld the employee contribution from their paychecks but failed to consistently deposit the employee's contribution as well as the employer's contribution to the IRAs. For each pay period, the respondent issued a pay stub to the employees which indicated that the withheld funds had been deposited into the IRA accounts. Employees received quarterly account statements from the IRA custodian showing that these funds had not been deposited (or had been deposited later than the time indicated on the pay stub).

"12.     In May, 2015, L.M., who had been employed as an associate attorney employed with Pendleton & Sutton, left her job to work for another law firm. At that time, L.M. discovered that the respondent failed to consistently deposit L.M.'s contribution and the employer's contribution to the Simple IRA plan. On June 2, 2015, L.M. sent the respondent a demand letter:

'While employed at Pendleton and Sutton, LLC from January 2012-May 2015, the firm offered its employees a 3% match on a Simple

2

IRA program. As such I fully partook and chose to have 3% of each pay period deferred and applied to a Simple IRA. Each paystub over the years reflects the 3% employee deferral and 3% employer contribution. However, upon recent detailed review of my American Funds Simple IRA transaction history, I came across a large discrepancy between the deferrals and contributions listed on my paystubs (which I still have) and ones actually paid into the fund.

'I have conducted a detailed review of almost 3.5 years of paystubs and my fund's historical value, and based upon my calculations, it appears my portfolio is short almost $9,000.00. This calculation includes the deferrals and contributions that the paystubs reflect, but you have fraudulently and consistently withheld from my Simple IRA portfolio. The calculation also includes interest I have lost out on over the years due to your mishandling of the deferrals and contributions. I believe these actions constitute breach of contract and fraud, and may also be in violation of K.S.A. 21-5801.

'In effort to resolve this situation as amicably as possible, I am willing to forego instituting legal proceedings against you in exchange for a lump sum of $20,000.00, half of which is to be paid directly into my Simple IRA portfolio, and half of which is to be paid directly to me via certified funds.

'If I have not received contact from you or both disbursements stated above by June 15, 2015, I will have no other choice but to obtain legal counsel and pursue remedies available under the law. My contact information is below, and I look forward to hearing from you to settle this matter amicably.'

According to the respondent, she did not timely receive this letter, as it was buried on her desk.

"13.     On June 25, 2015, L.M. filed a complaint with the disciplinary administrator's office against the respondent. On June 25, 2015, the respondent responded to L.M.'s complaint, as follows:

'As we discussed, [L.M.] has filed a complaint regarding my failure to fund the SIMPLE IRA. [L.M.] was aware of the fact I was having financial difficulties and was unable to fund the SIMPLE IRA. I have been trying to get a loan to resolve numerous outstanding financial issues the firm has experienced. Unfortunately a lot of this has been fueled by lawsuits brought against the firm for FDCPA and Bankruptcy stay violations by two of my former associate attorneys.

'On June 12, 2015, I was finally able to secure a line of credit from Central Bank of the Midwest. I have been waiting on that to fund so that I could resolve this along with various other financial obligations. The loan has funded and is now available for me to draw down on. I will be paying this over the weekend.

'I understand the firm's financial issues are my responsibility and do not excuse me from handling these issues.

'Please feel free to contact me to discuss this matter further. I will provide proof of payment as soon as I receive it.'

"14.     On June 29, 2015, the respondent sent L.M. an email message.

'I came across your letter on my desk over the weekend. Unfortunately, someone had laid it under other documents on my desk.

'I have manually reviewed every paycheck you have received during your tenure at Pendleton and Sutton. I have attached a QuickBooks report detailing this. . . . Thus, your allegation that I have failed to pay $9000.00 into your account is false.

4

. . . .

'As for the remaining sums, I was able to secure a loan on June 12, 2015, in order to resolve numerous financial issues here at the firm including the remaining contributions of $2071.14 and deductions in the sum of $2221.10. Unfortunately, I was unable to secure enough funds to resolve the $7500.00 incurred by the firm due to your gross negligence in the [S] case wherein you violated the bankruptcy stay not once but twice. Obviously, I am reviewing the firms options in regard to this liability.

'As for your demand for $20,000 I believe it to be absurd, regardless the firm nor I have those kinds of funds.'

"15.     On July 17, 2015, the respondent provided a supplemental response. The respondent's supplemental response included the following:

'This letter is intended to supplement my original response to the claim in this case. Unfortunately since, [*sic*] the beginning of 2014 the firm has suffered significant financial issues. This has impacted me personally resulting in severe anxiety and depression for which I am in treatment. My personal situation was further impacted by the loss of my grandfather (who was a father to me) on December 24, 2015. I have been working diligently to try to improve my health as well as the firm's.

'I believe it would be useful to provide some background to the complaint as there have been several items involving [L.M.] that have further complicated the financial situation of Pendleton & Sutton. One is a lawsuit that was filed as a result of [L.M.]'s negligence . . . . On September 12, 2014, [S]'s attorney filed a suggestion of bankruptcy in a Johnson County, Kansas limited actions case. . . . On September 25, 2014, [L.M.] filed a Journal Entry of Judgment in the limited actions case. On October 29, 2014, [L.M.] filed a wage garnishment. On

5

November 20, 2014, a telephone call was received from [S]'s attorney indicating that Pendleton & Sutton had violated the bankruptcy stay. On November 20, 2015, a release of garnishment was filed along with a motion and order to set aside judgment. When this matter was discussed with [L.M.], she blamed the para-legal [R] who processed the Suggestion of Bankruptcy for not properly noting the file. I advised [L.M.] that the document was in the images associated with the file. This did not change her position. On January 23, 2015, Pendleton & Sutton was notified that a new bankruptcy attorney was re-opening the case in order to bring an adversary action against the firm and our client. On March 2, 2015, Pendleton & Sutton was served with the Petition. In the petition the Plaintiffs were seeking statutory damages, punitive damages as well as attorney's fees. In April 2015, I was notified by our insurance company that the [S] claim may not be fully covered. On April 7, 2015, I notified [L.M.] as follows: "Please be advised that The Bar Plan has notified me that the claim which has been filed for your actions in Ameri Best LLC v. Taylor [S] will not be fully covered. If a payment is made for intentional misconduct, punitive damages or attorney's fees to [S]'s attorney there will be NO insurance coverage. This means that you may have personal liability in this matter." Our minimum exposure at this point was $7,500.00 for the insurance deductible.

'On December 19, 2014, [E.S.], a legal assistance [*sic*] gave notice of her resignation. I discussed with her the reasons for her decision to resign. One of the reasons she cited was [L.M.]'s behavior toward her and other employees. This issue was discussed with [L.M.].

'On February 11, 2015, another legal assistance [*sic*], A.N., gave notice of her resignation. I discussed with her the reasons for her decision to resign. One of the reasons was that she felt [L.M.] was rude and condescending to her. An example she gave was that [L.M.] would regularly roll her eyes at the legal assistant when she was asked questions

6

of [L.M.]. Prior to her resignation, she had previously complained regarding [L.M.]'s behavior to her. [L.M.] was orally counseled.

'On February 13, 2015, I had a lunch meeting with [R] regarding an incident where I overheard her in [L.M.]'s office and [L.M.] was yelling. [R] advised that [L.M.] had indeed yelled at her regarding the February 11th resignation of the legal assistant. She accused [R] of lying to her regarding whether or not she knew the legal assistant was going to resign. [R] insisted that she has not lied to [L.M.]. [L.M.] became angry and yelled at [R] and ended the conversation by saying "F*** You!" to [R]. [R] indicated that she would prefer that she have limited contact [with] [L.M.].

'On February 19, 2015, I had lunch with [L.M.] to discuss her behavior toward [R]. During this conversation she insisted the [*sic*] [R] had lied to her and confirmed that she had yelled at [R] and told her "F*** You." I advised [L.M.] that her behavior was absolutely unacceptable. Again I discussed with her, her treatment of staff members.

'On or about March 11, 2015, [R] resigned citing in part the conflict with [L.M.].

'On March 19, 2015, [L.M.] was given a written reprimand for her failure to perform essential job duties. [L.M.] responded with a four page letter objecting to the discipline.

'On April 21, 2015, [L.M.] submitted her resignation.

'Upon closing books for the month of May 2015, I learned that the firm was approximately $30,000 short on revenue and would not be able to make payroll or pay bills for the month of June 2015. I contacted my business banker and discussed these issues. After much discussion

7

the bank finally agreed to give me a loan to meet the business's needs. However, it was explained to me in no uncertain terms that there would be no further loans.

'On June 12, 2015, I signed the loan documents and began awaiting funding of the loan.

'On June 25, 2015, I received an email from [L.M.] along with a copy of the disciplinary complaint. I submitted an email explaining the situation.

'On June 28-29, 2015, I performed a manual review of every payroll deduction and contribution for the entire duration of [L.M.]'s employment. I discovered a couple of errors in 2013. I funded those items to [L.M.]'s account as well as the 2014-2015 items. I notified [L.M.] via email of this funding and attached a complete report of all SIMPLE IRA history for her entire period of employment. I did not receive a response.

'On June 29, 2015, while going through my desk I came across a letter from [L.M.] dated June 2, 2015. Unfortunately my staff has a bad habit of laying things on top things [*sic*] on my desk. In this letter [L.M.] accuses me of having not ever funded her SIMPLE IRA and demanded that I pay her $20,000 or she would sue me.

'Based upon these issues with [L.M.], I truly believe her complaint to be retaliatory and an attempt to keep me from pursuing her for the $7,500.00 deductible which she owes the firm after all expenses owed to her have been paid, which they have been.

'Needless to say this past year and [*sic*] half have been exceedingly trying and I am doing to [*sic*] best that I can do. . . .' (Emphasis in original.)

8

"16.    On June 28, 2015, the respondent deposited what she believed she owed into L.M.'s IRA. Later, in January, 2016, the respondent learned from the Department of Labor that she had miscalculated the amount she owed to L.M. As a result, the respondent made an additional deposit into L.M.'s IRA account to make L.M. whole. L.M.'s IRA was not the only IRA that the respondent failed to properly fund. The respondent has properly funded all employees' and former employees' IRA accounts. In October, 2016, the respondent received a letter from the Department of Labor confirming that she has taken the corrective action indicated.

"*Conclusions of Law*

"17.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(c), as detailed below.

"KRPC 8.4(c)

"18.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when she withheld funds from employees paychecks and did not deposit the funds into the employees IRA accounts. The respondent issued pay stubs which indicated the withheld funds had been deposited into the IRA accounts. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"19.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual

9

injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"20. *Duty Violated*. The respondent violated her duty to the public to maintain her personal integrity.

"21. *Mental State*. The respondent knowingly violated her duty.

"22. *Injury*. While the respondent has now made all employees and former employees financially whole, nonetheless, the respondent's misconduct caused actual and potential injury to her employees and former employees.

"23. *Aggravating Circumstances*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

    a.    <u>Dishonest Motive</u>. The respondent argued that the misconduct was caused by her financial difficulties. However, the respondent withheld funds from employees' accounts. After withholding those funds from the employees' accounts, the respondent failed to deposit those monies into the IRA accounts. This conduct is dishonest. Additionally, the notations on the pay stub, which indicated that the deposits had been made into the IRA accounts perpetuated the dishonesty.

    b.    <u>A Pattern of Misconduct</u>. The respondent engaged in a pattern of misconduct when, for a period of years, the respondent failed to properly pay the employees withheld funds into their IRA accounts and when she failed to deposit the employer share into the IRA accounts. Again, for each pay period, the respondent made notations on the pay stubs which made it appear as though the deposits were being made.

10

c.    Refusal to Acknowledge Wrongful Nature of Conduct.  While the respondent acknowledged that she failed to deposit the withheld employee funds into the IRA accounts and failed to deposit the employer share into the IRA accounts, the respondent has minimized her conduct and blamed others.

d.    Vulnerability of Victim.  L.M. and the respondent's other employees were vulnerable to the respondent's misconduct.

e.    Substantial Experience in the Practice of Law.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1998. At the time . . . the misconduct began, the respondent had been practicing law for approximately 15 years.

"24.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.    Absence of a Prior Disciplinary Record. The respondent has not previously been disciplined.

b.    Absence of a Selfish Motive.  The respondent's misconduct does not appear to have been motivated by selfishness.

c.    Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.  The respondent suffers from mental health issues. The respondent's mental health issues may have affected her ability to promptly recognize and correct her misconduct. Accordingly, the hearing panel concludes that the respondent's personal or emotional problems contributed to her violation.

d.    The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment

11

of the Transgressions. The respondent admitted the facts that gave rise to the violations and was cooperative, forthcoming, and contrite during the hearing. However, as mentioned above, in her response to the initial complaint and in her supplemental response to the initial complaint, the respondent minimized her culpability.

e.     Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. The respondent is an active and productive member of the bar of Lawrence, Kansas. The respondent also enjoys the respect of her peers and generally possesses a good character and reputation as evidenced by letters received by the hearing panel.

f.     Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"25.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"26.     The disciplinary administrator recommended that the respondent be suspended from the practice of law. Further, the disciplinary administrator recommended that an indefinite suspension be the most severe discipline imposed. Finally, the disciplinary administrator argued that the hearing panel may recommend a shorter period of suspension. Counsel for the respondent recommended that the proposed plan of probation be adopted and that his client be permitted to continue to practice law, subject to the terms and conditions of the plan.

12

"27.     Before a hearing panel can recommend that a respondent be placed on probation, the hearing panel must find that:

'(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the hearing panel at least fourteen days prior to the hearing on the Formal Complaint;

'(ii)    the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii)   the misconduct can be corrected by probation; and

'(iv)    placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"28.     The hearing panel concludes that the respondent developed a workable, substantial, and detailed plan of probation and provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel 15 days prior to the hearing on the formal complaint.

"29.     The respondent testified that she put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan.

"30.     In this case, the hearing panel believes that the misconduct can be corrected by probation. The hearing panel concludes that the circumstances which gave rise to the violations in this case are unlikely to repeat. While the respondent engaged in misconduct by failing to deposit the withheld funds and failing to deposit the employer share, the respondent quickly deposited the funds following L.M.'s complaint. The respondent made L.M. and the other employees whole, including paying the interest

13

which would have been received had the fund[s] been timely deposited. *But* see *In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ('Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.').

"31.     The hearing panel concludes that given the respondent's presentation during the hearing on the formal complaint, the respondent has learned her lesson and that she will likely succeed if given the chance to continue to practice subject to supervised probation. Thus, the hearing panel concludes that placing the respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.

"32.     Accordingly, based upon the findings of fact, conclusions of law, the Standards listed above, and Kan. Sup. Ct. R. 211(g)(3), the hearing panel unanimously recommends that the respondent be placed on probation for a period of three years. The hearing panel further recommends that the respondent's probation be made subject to the following terms and conditions:

a.     *Supervision.*  Mark Andersen, a licensed Kansas attorney practicing in Lawrence, Kansas, will serve as the respondent's monitor. The monitor will be acting as an officer and an agent of the court while monitoring the respondent's Simple IRA contributions. The monitor will be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the monitoring period.

b.     *Monthly Meetings*.  Throughout the period of probation, the respondent and the monitor will meet on a monthly basis.

c.     *Cooperation and Access.*  The respondent has provided and will continue to provide the monitor with access to the files and financial records of her law firm. The respondent will comply with all requests made by the monitor.

14

d.      *Respondent's Monthly Reports.*  If the respondent continues to provide Simple IRAs as a benefit to her employees, the respondent will provide the monitor with a monthly report detailing the contributions made to the Simple IRA accounts.

e.      *Monitor's Quarterly Reports*.  The monitor will review the respondent's monthly report as well as the respondent's financial records to determine whether the respondent properly funded each employee's Simple IRA account and any relevant observations regarding the financial aspects of the respondent's practice. On a quarterly basis, the monitor will make a written report detailing the respondent's compliance with the terms and conditions of probation. The monitor will provide the disciplinary administrator and the respondent with a copy of each quarterly report. The respondent shall follow all recommendations and correct all deficiencies noted in the monitor's quarterly reports. If the monitor discovers any violations of the Kansas Rules of Professional Conduct, the monitor will immediately notify the respondent and the disciplinary administrator of the violations in writing.

f.      *Treatment*.  Throughout the period of supervised probation, the respondent shall continue her mental health treatment identified during the hearing, unless the treatment providers determine that continued treatment is no longer necessary. The treatment providers will notify the disciplinary administrator in the event that the respondent discontinues treatment against the recommendation of the treatment providers during the probationary period. The respondent will provide the treatment providers with appropriate releases of information to allow the treatment providers to provide such information to the disciplinary administrator.

g.      *Continued Cooperation*.  The respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary

15

Administrator requests any additional information, the respondent shall timely provide such information.

h.    *Professional Accountants*.  The respondent will maintain professional accountants to assist with financial accounting of the firm.

i.    *Additional Violations*.  The respondent shall not violate the terms of her probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent shall immediately report such violation to the disciplinary administrator. The disciplinary administrator shall take immediate action directing the respondent to show cause why the probation should not be revoked.

"33.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2017 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which she filed an answer, and adequate notice of the hearing before the panel and the hearing

16

before this court. The respondent filed exceptions to the hearing panel's final hearing report.

At the hearing before the panel, the office of the Disciplinary Administrator suggested that the respondent be suspended, that indefinite suspension be the most severe discipline imposed, and that a shorter period of suspension might be recommended. The respondent requested probation according to her proposed probation plan. The hearing panel recommended the respondent be placed on probation for a period of three years subject to the nine conditions listed in the final hearing report.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be indefinitely suspended. The respondent requested probation for a period of three years or less.

The respondent filed exceptions to the hearing panel's final hearing report, asserting that the findings were incomplete and failed adequately to take into account her misdiagnosed psychological condition and her ability to form intent. A careful examination of the record, however, shows that the hearing panel's findings were supported by clear and convincing evidence presented at the hearing. The findings made reference to the mitigating factors that the respondent advanced, and the hearing panel took them into account in making its recommendations. We therefore adopt the findings of the hearing panel. The issue remaining before us is the appropriate discipline.

CONCLUSION AND DISCIPLINE

The hearing panel's recommendation of probation was based in part upon its determination that the respondent's misconduct was mitigated by misdiagnosed and

17

improperly treated mental disabilities and that the respondent was successfully engaging in a self-imposed probationary plan. The recommendation is "advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended." Supreme Court Rule 212(f) (2017 Kan. S. Ct. R. 257).

The record shows that the respondent repeatedly used funds that were owed to her employees in the form of contributions to their IRA plans to cover her professional expenses, in effect committing conversion. This court has historically taken the position that conversion of funds warrants more severe discipline than probation. See, i.e., *In re Harrington*, 305 Kan. 643, 385 P.3d 905 (2016); *In re Davis*, 296 Kan. 531, 303 P.3d 250 (2013); *In re Holmes*, 293 Kan. 478, 264 P.3d 423 (2011); *In re Thomas*, 291 Kan. 443, 241 P.3d 104 (2010); *In re Pattison*, 284 Kan. 232, 159 P.3d 185 (2007). While the ABA Standards for Imposing Lawyer Sanctions address only conversion of client property, we deem the dishonesty exhibited toward employees and the conversion of employees' funds to be of a similar character, warranting more stringent discipline than probation.

Therefore, instead of adopting the discipline suggested by the hearing panel, by the respondent, or by the Disciplinary Administrator, a majority of the court elects to impose a three-year suspension, subject to lifting the suspension after six months upon application to and acceptance by the court. A minority of the court would adopt the recommendation of the hearing panel, in light of the testimony of mental health professionals, the respondent's willingness to make her employees whole, and the respondent's successful cooperation with counselors, medical professionals, and federal authorities.

IT IS THEREFORE ORDERED that Brandy L. Sutton be suspended from the practice of law in the State of Kansas, in accordance with Supreme Court Rule 203(a)(2) (2017 Kan. S. Ct. R. 234), for a three-year period.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2017 Kan. S. Ct. R. 262).

IT IS FURTHER ORDERED that the respondent may seek early reinstatement by motion to this court. Prior to filing this motion, the respondent must have the written approval of the office of the Disciplinary Administrator for a 30-month probation plan with terms and conditions acceptable to that office and conforming at a minimum to the conditions described in this decision. This written approval and plan of supervision must be filed as exhibits to the respondent's motion for early reinstatement. The respondent may file a motion for early reinstatement any time after the first six months of her suspension.

IT IS FURTHER ORDERED that, if the respondent does not move for early reinstatement as provided above, or is denied early reinstatement, and then seeks reinstatement after the three-year period, she shall comply with Supreme Court Rule 219 (2017 Kan. S. Ct. R. 263).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

BEIER, J., not participating.