No. 108,929

In the Matter of SCOTT C. STOCKWELL, *Respondent*.

(295 P.3d 572)

Opinion filed March 1, 2013.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton C. Hazlett*, Disciplinary Administrator was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Scott C. Stockwell*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Scott C. Stockwell, of Lawrence, an attorney admitted to the practice of law in Kansas in 1984.

On July 19, 2012, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on August 9, 2012, and an amended answer on September 14, 2012. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on September 18, 2012, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582) (candor toward the tribunal), 3.5(c)(2) (2012 Kan. Ct. R. Annot. 595) (communication with a judge without delivering copy in writing to opposing counsel), and 3.5(c)(3) (communication with a judge without notifying opposing counsel).

Upon conclusion of the hearing, the panel made the following findings of fact, conclusions of law, and recommendation to this court:

"FINDINGS OF FACT

. . . .

"6. On February 29, 2000, [L.R.B.] executed a last will and testament. Daryl Graves, a Lawrence attorney, drafted Mr. [B.]'s will. In Mr. [B.]'s will, Mr. [B] named his sons, [K.B.] and [J.B.], as executors of his estate.

"7. On December 4, 2010, Mr. [B.], a Jefferson County resident, died. Mr. [B.]'s estate consisted of real property and personal property. Mr. [B] was survived by his wife, [Mrs. B.], and his two adult sons. [Mrs. B.] is [K.B.]'s and [J.B.]'s step-mother.

"8. Following the death of their father, later in December 2010, [K.B.] and [J.B.] contacted Mr. Graves. As a result, Mr. Graves referred [K.B.] and [J.B.] to Kyle Brittingham for representation.

"9. Also in December 2010, Mrs. [B.] sought representation. Initially, Mrs. [B.] contacted Mr. Graves for representation. Mr. Graves informed Mrs. [B.] that he could not represent her. Thereafter, Mrs. [B.] retained the Respondent.

"10. In January 2011, Mr. Brittingham provided the Respondent with a copy of Mr. [B.]'s 2000 last will and testament, a copy of Mr. [B.]'s living will, a copy of powers of attorney, and a copy of a waiver. The waiver, purportedly signed by Mrs. [B.], released her claim to real property owned by Mr. [B.]. Mrs. [B.] denied signing the release. Later, the Respondent retained Barbara Downer, an experienced handwriting expert to compare the signature on the waiver with Mrs. [B.]'s signature. Mrs. Downer concluded that the signature on the waiver was not Mrs. [B.]'s signature.

"11. On February 6, 2011, the Respondent wrote to Mr. Brittingham regarding Mr. [B.]'s estate. The letter provided, in pertinent part:

. . . .

'You have provided me with a purported will of [Mr. B.]. It is my understanding that the original of that document has not been located, which by law would make it presumptively revoked.'

"12. On Friday, February 18, 2011, the Respondent and Mrs. [B.] met with Mr. Brittingham, [K.B.], and [J.B.]. During that meeting, Mr. Brittingham showed the Respondent and Mrs. [B.], Mr. [B.]'s original will.

"13. On Tuesday, February 22, 2011, the Respondent had an *ex parte* meeting with the Honorable Dennis L. Reiling, a district magistrate judge for Jefferson County regarding Mr. [B.]'s estate. During the meeting, the Respondent filed a petition for appointment of administrator under the Kansas Simplified Estates Act, a petition for appointment of special administrator, and an order for hearing on petition for appointment of administrator under the Kansas Simplified Estates Act to Judge Reiling, in case number 2011PR10, *In the Matter of the Estate of [Mr. B.]*. The Respondent failed to inform Mr. Brittingham of the meeting with Judge Reiling.

"14. In the Respondent's petition for appointment of administrator under the Kansas Simplified Estates Act and the order for appointment of a special administrator, the Respondent stated that Mr. [B.] died intestate. The Respondent made no mention of Mr. [B.]'s will in the pleadings. Additionally, the Respondent did not provide a copy of the pleadings to Mr. Brittingham, [K.B.], or [J.B.]. In the petition and order, the Respondent requested that Mrs. [B.] be appointed as the special administrator.

"15. According to Judge Reiling, the Respondent represented to him that Mr. [B.] died without a will. Judge Reiling does not remember the Respondent telling him of the 2000 last will and testament that Mr. Brittingham showed the Respondent. Had the Respondent indicated to Judge Reiling that Mr. [B.] executed a will, Judge Reiling would not have approved the appointment of a special administrator.

"16. According to the Respondent, the Respondent informed Judge Reiling that Mr. [B.] executed a will but that the will was not valid.

"17. [K.B.] and [J.B.] learned of the pleadings that the Respondent filed in behalf of Mrs. [B.] from the newspaper. After it was clear that this matter would be contested, Mr. Brittingham referred [K.B.] and [J.B.] to Cheryl Denton, f/k/a Trenholm, for representation. Thereafter, Ms. Denton called the Respondent and asked him to correct the pleadings. The Respondent refused to correct the pleadings, stating that he had a good faith basis to believe that the will was not valid.

"18. On March 11, 2011, Ms. Denton prepared a petition for vacation of order or modification of order. In the petition, Ms. Denton alleged:

'4. In Paragraph 3 of the Petition for Administrator, [Mrs. B.] states that decedent died intestate, notwithstanding that [Mrs. B.] had actual knowledge that petitioners had in their possession decedent's Will as petitioners' former attorney, Kyle Brittingham, had given her attorney, Scott C. Stockwell, a copy of decedent's Will on or before February 7, 2011, and petitioners and petitioners' former attorney Kyle Brittingham, showed her and her attorney, Scott C. Stockwell, the original of decedent's Will on February 18, 2011, during a meeting at Mr. Stockwell's office.

'5. [Mrs. B.] did not disclose the existence of decedent's Will in her Petition for Administrator or in her Petition for Special Administrator, notwithstanding that she is a person with knowledge of decedent's will and could be compelled to disclose this information under K.S.A. 59-2216.

'6. Petitioners have a duty to present the decedent's Will to the Court within six months of decedent's death under K.S.A. 59-621, and K.S.A. [59]-618 provides for penalties for withholding a will. [Mrs. B.] had actual knowledge that the petitioners were in possession of decedent's Will and intended to submit the decedent's Will for probate. [Mrs. B.] cannot circumvent the fact that the decedent had made a will by filing the Petition for Administrator and stating to the Court that decedent died intestate when she had actual knowledge that decedent had made a will as this statement is misleading and untrue.

. . . .

'8. [Mrs. B.] filed the Petition for Administrator with full knowledge of decedent's Will for the sole purpose of having herself appointed as special administrator to take control of the decedent's estate before the petitioners could file a petition for probate of will and appointment of executor and without notice to the petitioners.

. . . .

'10. Based on [Mrs. B.]'s representations in the Petition for Administrator and Petition for Special Administrator, the Court entered [*sic*] Order for Appointment of Special Administrator naming [Mrs. B.] as special administrator of the defendant's estate and did not require notice to be given to the petitioners as the Petition states the decedent died intestate and [Mrs. B.], as the decedent's surviving spouse, would be an heir of decedent and would appear to be a proper person to be appointed as special administrator pursuant to K.S.A. 59-709.

'11. If notice had been given to petitioners, they could have disclosed to the Court that the decedent had made a will, and that under the decedent's will, [Mrs. B.] receives nothing, and that they are the named executors, and that if the decedent's Will is admitted to probate, [Mrs. B.] is likely to file a spousal elective share, which would make her a creditor of the estate and not a devisee or legatee under the decedent's Will, and therefore, [Mrs. B.] is not a proper person to take control of decedent's estate as special administrator due to a conflict of interest.'

. . . .

"19.   On March 28, 2011, Ms. Denton filed a written defense to the petition for appointment of administrator and a petition for probate of will and issuance of letters testamentary.

"20.   On April 27, 2011, the Respondent filed a written defense and answer to the petition for vacation of order or modification of order.

"21.   On July 13, 2011, the court entered an order removing Mrs. [B] as special administrator because:

'a) she filed verified petitions with this Court indicating that the decedent died intestate with actual knowledge that there was a written instrument dated February 28, 2000 entitled "Last Will and Testament of [Mr. B]," which misstated the facts to the Court, and

'b) she has conflicts of interest with the estate as her position as spouse may be contrary to the intent of the decedent.'

The Court appointed [K.B.] and [J.B.] as co-special administrators.

"22.   Later, on February 15, 2012, the Court admitted Mr. [B.]'s 2000 last will and testament and [K.B.] and [J.B.] were appointed as co-executors.

## "CONCLUSIONS OF LAW

"23.   Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 3.3(a)(1) and KRPC 3.5(c), as detailed below.

"24.   Lawyers may 'not knowingly make a false statement of material fact or law to a tribunal.' KRPC 3.3(a)(1). The Respondent made a false statement of material fact to Judge Reiling when he stated that Mr. [B.] died intestate. Because the Respondent provided false information to the District Court, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1).

"25.   KRPC 3.5 provides:

'A lawyer shall not:

. . . .

(c) communicate or cause another to communicate as to the merits of a cause with a judge or official before whom an adversary proceeding is pending except:

(1) in the course of official proceedings in the cause;

(2) in writing, if the lawyer promptly delivers a copy of the writing to opposing counsel or to the adverse party if unrepresented;

(3) orally upon adequate notice to opposing counsel or the adverse party if unrepresented;

(4) as otherwise authorized by law or court rule;'

The Respondent violated KRPC 3.5(c)(2) when he filed pleadings without providing a copy of the pleadings to Mr. Brittingham. Additionally, the Respondent violated KRPC 3.5(c)(3) when he met with Judge Reiling *ex parte* without providing notice to Mr. Brittingham. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.5(c)(2) and KRPC 3.5(c)(3).

## "AMERICAN BAR ASSOCIATION
## STANDARDS FOR IMPOSING LAWYER SANCTIONS

"26. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"27. *Duty Violated.* The Respondent violated his duty to the legal profession to maintain his personal integrity.

"28. *Mental State.* The Respondent knowingly violated his duty.

"29. *Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to his client, to the opposing side, and to the court.

"30. *Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"31. *Prior Disciplinary Offenses.* In 2001, the Disciplinary Administrator informally admonished the Respondent. On December 17, 2004, the Kansas Supreme Court censured the Respondent for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15(b), KRPC 1.15(d)(1)(ii), KRPC 8.4(a), and KRPC 8.4(g). In June 2007, the Disciplinary Administrator informally admonished the Respondent for having violated KRPC 1.15(d). In October 2007, the Disciplinary Administrator informally admonished the Respondent for violating KRPC 1.1 and KRPC 1.3.

"32. *Dishonest or Selfish Motive.* The Respondent engaged in dishonest conduct when he stated in the pleadings that Mr. [B.] died intestate, when he failed

to inform Judge Reiling that Mr. [B.] executed a last will and testament, when he failed to provide Mr. Brittingham with a copy of the pleadings, and when he failed to inform Mr. Brittingham that he met with Judge Reiling. Accordingly, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty.

"33. *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process.* Throughout the disciplinary hearing, the Respondent failed to directly respond to questions asked. The Respondent's nonresponsive answers to questions was a deceptive practice.

"34. *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in 1984. Thus, at the time he committed the misconduct, the Respondent had 27 years of experience practicing law.

"35. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"36. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent provided three letters of support from Lawrence attorneys. According to the letters, the Respondent possesses good character and reputation.

"37. *Remoteness of Prior Offenses.* Some of the Respondent's previous disciplinary history is remote in time.

"38. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

## "RECOMMENDATION

"39. The Disciplinary Administrator recommends that the Respondent's license be suspended for a period of three years. However, the Disciplinary Administrator also recommended that the imposition of the suspension be stayed and that the Respondent be placed on probation for a period of three years, subject to the terms outlined in the proposed probation plan. The Respondent urged the Hearing Panel to recommend to the Supreme Court that the Respondent be placed on probation, subject to the terms and conditions detailed in the proposed probation plan.

"40. Kan. Sup. Ct., R. 211(g) details when probation is appropriate. That rule provides:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"41. The Hearing Panel seriously considered the parties' recommendation of probation in this case. However, the Hearing Panel is unable to recommend that the Respondent be placed on probation because all the requirements of Kan. Sup. Ct. R. 211(g) have not been met. First, the Respondent complied with Kan. Sup. Ct. R. 211(g)(3)(i) by developing a workable, substantial, and detailed plan of probation and by providing a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint.

"42. Next, Kan. Sup. Ct. R. 211(g)(3)(ii) requires a Respondent to place the plan of probation into effect prior to the hearing on the Formal Complaint. The Respondent and his proposed supervisor testified that as of the date of the hearing on the Formal Complaint, the Respondent had not put the plan of probation into effect. As such, the Respondent failed to comply with Kan. Sup. Ct. R. 211(g)(3)(ii).

"43. Third, the Respondent's misconduct involved dishonest conduct. The Respondent stipulated to a violation of KRPC 3.3(a)(1), by making a false state-

ment of material fact to the court. Dishonest conduct cannot be corrected by probation.

"44.    Finally, placing the Respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. This misconduct goes to the core of an attorney's oath: misrepresentation to a judge to gain an advantage in litigation. The public and the profession need to be protected from attorneys who engage in dishonest conduct.

"45.    Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for a period of one year.

"46.    Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2012 Kan. Ct. R. Annot. 350). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the proceedings before this court. The respondent filed no exceptions to the hearing panel's final hearing report. Hence, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2012 Kan. Ct. R. Annot. 368).

Furthermore, the evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore also adopt the panel's conclusions and determine that the respondent violated KRPC 3.3(a)(1) (2012 Kan. Ct. R. Annot. 582) (candor toward the tribunal), 3.5(c)(2) (2012 Kan. Ct. R. Annot. 595) (communication with a judge without delivering copy in writing to

opposing counsel), and 3.5(c)(3) (communication with a judge without notifying opposing counsel).

The only remaining issue before us is the appropriate discipline. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator concurred with the hearing panel's unanimous recommendation of a 1-year suspension. This recommendation was based on two factors: (1) the respondent's failure to put his probation plan into effect by the date of the panel's hearing as required by the rules of this court and (2) a concern about public safety because the underlying misconduct involved dishonesty. The respondent requested 3 years' supervised probation.

"The recommendation of the panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended . . . ." Supreme Court Rule 212(f) (2012 Kan. Ct. R. Annot. 370). In this case, we agree with the recommendation of the hearing panel and the Disciplinary Administrator. Probation is not appropriate in this case where the respondent failed to comply with Supreme Court Rule 211(g)(2). Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.

In addition, because of the respondent's comments at the hearing before this court regarding the benefit and even necessity of his practice being supervised, we impose a requirement of a reinstatement hearing under Supreme Court Rule 219 (2012 Kan. Ct. R. Annot. 398), as amended December 1, 2012. At that hearing, we direct the respondent, the office of the Disciplinary Administrator, and the reinstatement hearing panel to consider whether reinstatement is appropriate under the provisions of that rule and, if so, whether reinstatement should be conditioned on the respondent's agreement to a period of supervision or other limitation of his practice.

## Conclusion and Discipline

It Is Therefore Ordered that Scott C. Stockwell be suspended from the practice of law in the state of Kansas for a period of 1 year, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2012 Kan. Ct. R. Annot. 294).

It Is Further Ordered that the respondent shall comply with Supreme Court Rule 218 (2012 Kan. Ct. R. Annot. 397), as amended December 1, 2012, and in the event the respondent seeks reinstatement, he shall comply with Supreme Court Rule 219.

It Is Further Ordered that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.