IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,744

In the Matter of THOMAS CALEB BOONE,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed June 7, 2019. Indefinite Suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, and *Thomas Caleb Boone*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Thomas Caleb Boone, of Hays, an attorney admitted to the practice of law in Kansas in 1982.

On November 20, 2017, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent timely filed an answer to the complaint on January 18, 2018. A proposed probation plan was filed January 22, 2018. Stipulations signed by respondent and the office of the Disciplinary Administrator were filed August 7, 2018. Upon motion to continue which was granted on March 7, 2018, a hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on August 28, 2018, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2019 Kan. S. Ct. R. 295)

1

(competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 8.4(c) (2019 Kan. S. Ct. R. 387) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent stipulated to violating KRPC 3.4 (d) (2019 Kan. S. Ct. R. 353) (failure to comply with discovery request) and KRPC 8.4(d).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"DA12201

"12.    In 2010, the respondent filed suit on behalf of C.Z. against the Osawatomie State Hospital, the Kansas Secretary of SRS and the Director of the Osawatomie State Hospital in Miami County, for injuries sustained while C.Z. was a patient of the hospital in 2008.

"13.    On October 31, 2011, defendants filed a motion to dismiss based on the respondent's failure to prosecute the case. In the motion, counsel for the defendants alleged:

'This case will soon have been on file for fifteen (15) months. Soon it will be a year since the Plaintiff made effort to serve the moving Defendants.  No written discovery has been propounded to Defendants and no depositions have been scheduled or taken by Plaintiff.  The moving Defendants are aware of no action Plaintiff's counsel has taken to pursue the prosecution of the above-captioned case.'

2

The record does not reference the court's order related to this motion.

"14.     On January 3, 2012, the parties jointly moved to dismiss the case without prejudice. The court granted the motion. On August 20, 2012, under the savings statute, the respondent refiled the case.

"15.     On March 24, 2014, the court issued a case management order which set the following deadlines:

        a.     the parties were required to exchange lists of proposed non-expert witnesses and exhibits by May 5, 2014;

        b.     the plaintiff was required to make his expert witness disclosure by June 16, 2014;

        c.     the plaintiff was to undergo the statutory medical examination by August 22, 2014;

        d.     the parties were to complete discovery by September 8, 2014; and

        e.     the parties were to file all dispositive motions by October 6, 2014.

"16.     The respondent failed to comply with the court's case management order.

"17.     On June 16, 2014, the court held another case management conference. According to the court's notes, the court set the following deadlines:

        a.     the respondent was required to prepare the case management conference order;

3

b.	the plaintiff was required to provide a list of proposed non-expert witnesses and exhibits within five days;

c.	the plaintiff was required to file a statement of monetary damages within five days;

d.	the plaintiff was required to make its expert witness disclosure by August 1, 2014;

e.	the plaintiff was to undergo the statutory medical examination by September 10, 2014;

f.	the parties were to complete discovery by October 10, 2014; and

g.	the parties were to file all dispositive motions by November 21, 2014. Finally, the court scheduled another case management conference for September 5, 2014.

"18.	On June 20, 2014, the respondent filed a non-expert witness and exhibit list as required. The respondent failed to file the statement of monetary damages as required.

"19.	The respondent also failed to draft a case management conference order as directed by the court. As a result, counsel for the defendants drafted a case management order on August 8, 2014.

"20.	The respondent failed to disclose an expert witness by August 1, 2014, as ordered by the court. On August 18, 2014, the respondent filed a motion for an extension of time to disclose an expert witness.

"21.	On September 5, 2014, the court held the next scheduled case management conference. The court ordered the parties to develop a new case management order. The parties agreed to the following deadlines:

4

a.      the plaintiff was to file discovery responses by September 12, 2014;

b.      the plaintiff was to file the written statement of monetary damages by September 12, 2014;

c.      the plaintiff was required to make the expert witness disclosure by September 22, 2014;

d.      the plaintiff was to undergo the statutory medical examination by November 7, 2014;

e.      the parties were to complete discovery by December 8, 2014; and

f.      the parties were to file all dispositive motions by January 19, 2015.

After agreeing to the new deadlines, on September 8, 2014, counsel for the defendant drafted a proposed case management conference order and emailed the proposed order to the respondent. The respondent failed to sign and return the case management order.

"22.      The respondent failed to provide discovery by September 12, 2014. The respondent failed to provide a written statement of monetary damages by September 12, 2014. The respondent failed to disclose his expert witness by September 22, 2014.

"23.      On October 2, 2014, counsel for the defendants filed a second motion to dismiss for failure to prosecute.

"24.      On October 6, 2014, the respondent filed a designation of expert witness by fax. The respondent named Don Horton, R.N. as the expert witness. The respondent

5

signed the designation. The respondent included certain factual allegations and the following to summarize Mr. Horton's opinions:

'The expert witness believes these Defendants negligently failed to promulgate policies, procedures and/or systems to ensure that the proper hospital personnel could take quick corrective action in this instance. In the alternative, the hospital personnel who did receive the warnings described above, failed to act prudently in light of these warnings and failed to protect the Plaintiff from three threatening male patients. The expert witness believes that the warnings which Tim and she timely gave to the Defendants and/or their employees were more than sufficient to enable them to act in a timely fashion to easily and effectively protect the Plaintiff by physically intervening and physically separating the male patients from her before she was finally attacked.'

"25.    Also on October 6, 2014, the respondent filed plaintiff's statement of monetary damages.

"26.    On October 24, 2014, the respondent filed a response to the defendant's motion to dismiss.

"27.    On October 29, 2014, the court entered a second amended case management order which had previously been approved by the parties. It appears that the second amended case management order was drafted with the expectation that it would be entered in September, 2014. Many of the deadlines delineated in the order had passed by the time the order was signed. In addition, the court set the following deadlines:

a.    the defendant was required to make expert witness disclosures by November 7, 2014;

b.    the plaintiff was required to undergo the statutory medical examination by November 7, 2014;

6

> c. the parties were required to complete all discovery by December 8, 2014; and
>
> d. the parties were required to file all dispositive motions by January 19, 2015.

"28. On November 7, 2014, the respondent filed a second designation of expert witness, naming Gerald Gentry, Ph.D., as an expert in the case. The document contained the same opinion language as the designation of Mr. Horton. *See* ¶ 24, above. Again, the designation was signed by the respondent.

"29. Also on November 7, 2014, the court heard the defendants' motion to dismiss. During the hearing, the respondent indicated that he filed the second expert witness designation because Mr. Horton was unavailable. The court took the motion under advisement.

"30. The respondent provided counsel for the defendant authorization to contact Mr. Horton to discuss the initial expert witness designation. On November 17, 2014, the defendants filed an objection to plaintiff's expert witness designation because Mr. Horton 'never agreed to be an expert witness and [he] informed [the respondent] that he did not believe Plaintiff had a case.' The respondent responded indicating that he was negligent in taking notes of interviews with potential expert witnesses and attributed the statements of another to Mr. Horton.

"31. On April 29, 2015, the court took up the defendant's objection to the plaintiff's expert witness disclosure and a motion for sanctions. The parties were afforded an opportunity to argue the issues.

"32. On May 16, 2016, the court issued a written ruling on the objection and motion. The court found that the respondent failed to prosecute the plaintiff's case. The court found that it had been more than seven years since the date of the alleged injury and that the time lapse would affect the memory of witnesses and make it impractical, if not impossible, for the defendants to present a defense.

7

"33. The court found that the respondent missed numerous deadlines. The court stated that the 'Plaintiff has, with very rare exception, failed to comply with deadlines set by this Court or agreed to by Plaintiff.'

"34. The court noted that the 6th Judicial District Local Rule 14 requires a party designating an expert to submit, '[a] written report signed by the witness' which 'shall contain a complete statement of all opinions to be expressed and the bases and reasons therefore.' Neither untimely expert witness designation filed by the respondent complied with Local Rule 14. The district court concluded:

'. . . [expert witness designations] were neither signed by the expert holding the opinions, nor contained a complete statement of all opinions to be expressed and the bases and reasons therefore as evidenced by the false disclosure of Don Horton and the arguments by counsel regarding the deposition testimony of Gerald Gentry.'

The court further explained that had the respondent complied with the local rule, the respondent would not have provided the 'untrue witness designation of Mr. Horton because Mr. Horton would have had to review and sign the disclosure, affording Plaintiff the opportunity to realize the mistaken identity.'

"35. As a result, the court sanctioned the respondent by dismissing the case.

"36. On June 16, 2016, the respondent filed a request that the court alter or amend its judgment and/or grant a new hearing on the motion to dismiss and/or grant relief from judgment. The respondent's requests were denied.

"37. The respondent filed a notice of appeal in the case on September 23, 2016. The respondent filed three motions requesting extensions of time to file an opening brief. On August 4, 2017, the Kansas Court of Appeals affirmed the district court's decision.

a. The Kansas Court of Appeals found that the respondent failed to provide citations to the record as required by court rule to support his claim that the court found fraud on the part of the respondent as a basis for dismissing C.Z.'s case. The court stated that the respondent did not support his argument with citations because there was no evidence in the record that the district court based the dismissal on fraud.

b. The court also found that the delay caused prejudice to the defendants in the case. The court noted that defense counsel had contacted all eight employees of the hospital who were present at the time of the alleged incident with C.Z. Out of the eight, only two remembered C.Z. and none remembered the alleged incident.

c. Additionally, the court concluded that the respondent's conduct in repeatedly missing deadlines interfered with the judicial system.

d. Finally, the court found that there was 'ample evidence from which a reasonable person could have found that Boone failed to prosecute C.Z.'s case to such an extent that dismissal was warranted.'

"38. Three days after the Kansas Court of Appeals released its opinion, Chief Judge Arnold-Burger, of the Kansas Court of Appeals, reported the respondent's conduct in this case to the disciplinary administrator's office.

"39. On September 1, 2017, the respondent filed a motion for rehearing or modification. The court denied the respondent's motion for rehearing or modification with the Kansas Court of Appeals. The respondent filed a petition for review with the Kansas Supreme Court. On April 27, 2018, the court denied the respondent's petition for review.

9

"40.     The president of Kape Roofing and Gutters retained Michael Alley to collect $5,100 from C.M.C. Mr. Alley filed a mechanic's lien against C.M.C.'s house and sent a demand letter to C.M.C. After Mr. Alley filed the mechanic's lien, C.M.C. placed signs in his yard critical of Kape's work.

"41.     Later, Kape's president retained the respondent to file suit against C.M.C. and Community First National Bank (hereinafter 'the bank') in Dickinson County, Kansas, on behalf of himself and Kape (hereinafter 'the plaintiffs'). On July 9, 2012, the respondent filed suit in Dickinson County on behalf of the plaintiffs. On August 3, 2012, the respondent filed an amended petition. The respondent sought a permanent injunction against C.M.C. as well as damages for defamation, tortious interference with a prospective business advantage, and breach of contract. The respondent also sought to foreclose on the mechanic's lien. During the litigation, the respondent asserted that the plaintiffs' damages were $7,200,000 in lost income and profits and $250,000 for pain, suffering, and mental anguish.

"42.     C.M.C. filed an answer and counterclaim alleging fraud and the tort of outrage. The bank filed an answer on November 15, 2012.

"43.     On December 31, 2012, the bank served the plaintiffs with discovery. The respondent did not timely respond to the request for discovery. Counsel for the bank conferred with the respondent on several occasions regarding the production of timely discovery. However, the respondent did not timely file the responses to discovery nor did the respondent lodge an objection to the discovery requests. On April 4, 2013, the bank filed a motion to compel discovery.

"44.     On January 24, 2013, C.M.C. served discovery on the plaintiffs. The respondent did not timely provide the discovery. Counsel for C.M.C. conferred with the respondent on numerous occasions to secure discovery and avoid court action. On April 5, 2013, counsel for C.M.C. sent a Golden Rule letter. However, the respondent did not

timely file responses to discovery nor did he make any objections. On April 15, 2013, C.M.C. filed a motion to compel discovery.

"45.     The court scheduled a hearing on the motions to compel discovery for April 26, 2013. The respondent had a schedule conflict with that date. The respondent called counsel for C.M.C. and asked her to agree to an order continuing the case. Counsel for C.M.C. refused to do so. Additionally, counsel for the bank did not agree to continue the hearing.

"46.     On April 25, 2013, the respondent's father, Thomas [C.] Boone, an attorney licensed in Kansas, filed a motion to continue the case. The respondent's father, however, had not entered an appearance in the litigation. The court did not grant the senior Boone's motion.

"47.     The respondent did not appear at the hearing held April 26, 2013.

"48.     Following the hearing, the court entered an order that if the respondent failed to provide the discovery within 10 days, the court would strike the plaintiffs' pleadings and dismiss the case. The court ordered the respondent to pay $1,300 to counsel for C.M.C. and $1,125 to counsel for the bank. The respondent did not provide discovery as ordered but the respondent did file a timely motion for an extension of time. Thereafter, the parties engaged in discovery.

"49.     On January 27, 2014, the defendants filed a motion for summary judgment. The court scheduled a pretrial conference for March 7, 2014.

"50.     In advance of the scheduled pretrial conference, on February 19, 2014, the respondent contacted opposing counsel and asked for their agreement to a continuance of the pretrial conference because he was scheduled to be out-of-state taking a deposition. Opposing counsel agreed to a continuance to a date certain in April, 2014. However, the respondent failed to file a motion and set forth the reason for the continuance. Additionally, the respondent also failed to circulate a proposed order to opposing counsel.

11

"51.     Because the respondent failed to file a motion and circulate a proposed order, on February 26, 2014, counsel for C.M.C. sent the respondent an electronic mail message, reminding him to file a motion and proposed order. The respondent failed to do so.

"52.     On March 3, 2014, counsel for C.M.C. spoke with the respondent and again reminded him to file a motion and proposed order. The respondent did not file a motion or provide a proposed order continuing the pretrial conference.

"53.     The court held the pretrial conference as scheduled. The respondent failed to appear. Counsel for C.M.C. moved to strike the pleadings filed by the respondent on behalf of the plaintiffs. The court granted the defendants' joint motion for partial summary judgment, the court denied the plaintiffs' motion for punitive damages, the court granted C.M.C.'s motion to add claims for punitive damages, and the court struck the plaintiffs' pleadings, including the plaintiffs' answer to C.M.C.'s counterclaims. The plaintiffs lost their cause of action because the respondent failed to file a motion to continue the pretrial conference.

"54.     On May 20, 2014, the respondent filed a motion asking the court to provide his client relief from what he described as the default judgment entered by the court as a result of the hearing which occurred on March 7, 2014. The respondent also requested permission to file an interlocutory appeal. On May 28, 2014, C.M.C. responded by pointing out that the court had not entered a default judgment. The court denied the respondent's motion.

"55.     The court scheduled a jury trial on C.M.C.'s counterclaims for July 17, 2014. The court ordered the parties to exchange proposed jury instructions. The respondent failed to exchange proposed jury instructions.

"56.     On June 25, 2014, the respondent filed an untimely motion for summary judgment.

12

"57.     At a subsequent status conference, the district court ordered that the trial be a bench trial rather than a jury trial because the respondent failed to file proposed jury instructions. The court refused to consider the respondent's motion for summary judgment because it was untimely.

"58.     At the July 17, 2014, bench trial, the court granted judgment in favor of C.M.C. The court rejected the plaintiffs' advice of counsel defense and reaffirmed the previous finding that the mechanic's lien claim was improper and out of time. The court found that the plaintiffs caused C.M.C. substantial financial loss, engaged in outrageous conduct, and intentionally and maliciously committed deceptive acts. The court ordered the plaintiffs to pay compensatory damages of $88,000, punitive damages in the amount of $10,000, a civil penalty of $10,000, and $20,000 for attorney fees.

"59.     The respondent appealed the court's decisions. In affirming in part and reversing in part, the Kansas Court of Appeals stated:

'Our policy in Kansas is to try lawsuits on their merits and not to award judgments based on the inaction of trial counsel. Unfortunately, this case is an example of the struggle a trial judge has when a lawyer fails to do what he is supposed to do in a timely way. A Kansas judge, keeping in mind the rights of the parties, has the authority and duty to sanction parties and lawyers as needed in order to bring a legal action to a just conclusion. Justice seldom arises from letting a case remain idle. In doing so, however, the judge must establish appropriate sanctions with an eye on what was done or not done. When setting sanctions, the judge must also consider the consequences of that lawyer's inaction. The more flagrant, harmful, foul deserve the more serious sanction.

'We see no evidence in the record that Kape Roofing and Gutters, Inc. was complicit in Caleb Boone's failure to appear for a pretrial conference. We vacate the ultimate sanction of striking Kape's pleadings. We remand for reconsideration of imposing a more reasonable sanction.

13

. . . .

'Contemplating this string of not doing things when they needed to be done makes us understand why the judge was exasperated with Boone's recurrent inattention to the case and his duty to move it forward. We understand the frustration the trial judge experienced when counsel delayed the resolution of this lawsuit.

'We cannot tell from this record whether Boone did all of this deliberately or was simply negligent. If it was deliberate, then he was disrespectful of the very system he has sworn to uphold. If he was negligent, then he did his client a grave disservice.

'Further, we cannot tell from this record if Boone's client participated in a strategy of delay. This concerns us because the sanction of striking pleadings affects Kape the most. Should a litigant be penalized for the negligence of its agent? If Kape was in no way responsible for Boone's inaction, failure to appear, or move for a continuance, is it reasonable to punish his client? If there is evidence of complicity then we see where imposing the ultimate sanction is appropriate. We just cannot affirm such an action with the record we have before us.

. . . .

'We affirm that Boone's failure to appear at the pretrial conference was subject to sanction. But we vacate the striking of all of Kape's pleadings on Count II as unreasonable in the light of the record submitted on appeal and remand the matter for the court's reconsideration of a more appropriate sanction.'

14

"60.     During the appellate process the plaintiffs were required to file a $150,000 supersedeas bond to stay the execution of the judgments. When the case was remanded by the Kansas Court of Appeals to the district court for further proceedings, the parties settled the case. The plaintiffs paid C.M.C. and his attorneys $30,000 from the supersedeas bond in exchange for a mutual release.

"*Conclusions of Law*

"61.     The respondent stipulated that he violated KRPC 1.1 (competence), KRPC 1.3 (diligence), and KRPC 8.4(d) (conduct prejudicial to the administration of justice). In addition, based on the above findings of fact, the hearing panel concludes that the respondent also violated KRPC 8.4(c) (dishonest conduct). Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 8.4(c) (dishonest conduct), and KRPC 8.4(d) (conduct prejudicial to the administration of justice), as detailed below.

"KRPC 1.1

"62.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.'

"63.     The respondent stipulated that his failure to comply with Local Rule 14 in designating an expert witness in C.Z.'s case, violated KRPC 1.1. Local Rule 14 requires '[a] written report signed by the witness' which 'contain[s] a complete statement of all opinions to be expressed and the bases and reasons therefore.' Both untimely expert witness designations were signed by the respondent and not by the experts. Also, both untimely expert witness designations did not contain a complete statement of the bases and reasons for the opinions.

"64.     Additionally, on appeal, the respondent asserted that the court found that he engaged in fraud and that was the basis for the dismissal of C.Z.'s case. The Kansas Court of Appeals noted that the respondent failed to provide citations to the record as

15

required by court rule to support his claim that the court based the dismissal of C.Z.'s case on the respondent's fraud. The Kansas Court of Appeals explained that the respondent could not have provided citations to the record as required by court rule because the district court did not base the dismissal on the respondent's fraud. The respondent exhibited a lack of competence in alleging that the district court's dismissal was based on fraud when it was not.

"65.     Finally, in the appeal the respondent filed in the Kape litigation, the respondent argued that the district court improperly granted the defendant default judgment. The court did not grant the defendant default judgment. Rather, the district court sanctioned the respondent by striking the plaintiffs' pleadings. The respondent exhibits a lack of competence in alleging that the district court's action was a default judgment when it was a sanction leveled because of the respondent's lack of diligence.

"66.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

"KRPC 1.3

"67.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent his clients.

"68.     The respondent stipulated that his failure to timely prosecute C.Z.'s case amounted to a violation of KRPC 1.3. The respondent's failure to prosecute C.Z.'s case led to the defendant's filing their first motion to dismiss.

"69.     The respondent also stipulated that his failure to comply with multiple case management orders in C.Z.'s case also violated KRPC 1.3. The respondent failed to provide witness and exhibits lists, have the plaintiff submit to the statutory medical examination, timely make an appropriate expert witness designation, timely respond to discovery requests, and timely file the statement of monetary damages. As a result of the respondent's repeated failures to comply with case management orders, on October 6, 2014, the defendants filed a second motion to dismiss for failure to prosecute the case.

16

The respondent's lack of diligence in represent[ing] C.Z. was so extreme that the district court granted and the Kansas Court of Appeals upheld the unusual sanction of dismissal.

"70.    The respondent also failed to prepare a case management order as directed by the court. The respondent's failure to prepare a case management order exhibited a lack of diligence in violation of KRPC 1.3.

"71.    The respondent stipulated that his failure to comply with discovery in the Kape litigation and his failure to file a motion to continue the March 7, 2014, hearing violated KRPC 1.3. Because the respondent failed to file a motion to continue the March 7, 2014, hearing, the court dismissed his clients' pleadings. And, while the Kansas Court of Appeals reversed the district court on this point, the respondent's failure to file the motion negatively impacted his clients nonetheless.

"72.    Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 3.4

"73.    In litigation, an attorney must comply with court orders and cooperate in the discovery phase of the case. When an attorney fails to do what he is supposed to do, the attorney's client and the administration of justice are not served. KRPC 3.4(d) prohibits attorneys from, 'mak[ing] a frivolous discovery request or fail[ing] to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party.'

"74.    The respondent stipulated that he violated KRPC 3.4(d) in representing C.Z. and the plaintiffs in the Kape litigation by failing to promptly comply with discovery requests. The respondent's failure to comply with discovery requests resulted in significant delays in both cases.

17

"KRPC 8.4(c)

"75.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c).

"76.     In this case, the respondent filed an expert witness designation which attributed certain opinions to Don Horton, R.N., which Mr. Horton did not hold. The hearing panel does not find the filing of the expert witness designation to be a violation of the rule, as the hearing panel accepts the respondent's explanation that he failed to take accurate notes and confused which individual had agreed to serve as an expert witness. However, on November 7, 2014, the respondent argued that he filed a second expert witness designation, not because he inadvertently included the wrong name, but because Mr. Horton was unavailable. The respondent's statement to the court was dishonest. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"77.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d).

"78.     The respondent engaged in conduct that was prejudicial to the administration of justice when he filed an expert witness designation naming Mr. Horton as an expert witness when Mr. Horton did not agree to be an expert witness and when Mr. Horton did not hold the opinions which the respondent attributed to him.

"79.     The respondent stipulated that his conduct in failing to prosecute C.Z.'s case violated KRPC 8.4(d). The respondent's conduct in representing C.Z. caused significant delay and resulted in the dismissal of her cause of action, prejudice to the defendants, and prejudice to the administration of justice.

"80.     As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

18

"81.     In making its recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"82.     *Duty Violated*.  The respondent violated his duty to his clients, the legal profession, and the legal system.

"83.     *Mental State*.  The respondent knowingly violated his duties.

"84.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to his clients, the legal profession, and the legal system.

"Aggravating and Mitigating Factors

"85.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

    a.     *Prior Disciplinary Offenses*.  The respondent has been previously disciplined on four occasions, as detailed below:

    1)     On June 16, 2000, the Kansas Supreme Court placed the respondent on two years' probation for having violated KRPC 1.3 (diligence), KRPC 3.1 (meritorious claims and contentions), KRPC 3.2 (expediting litigation), KRPC 3.4(c) (disobey obligation), KRPC 3.4(d) (discovery), and KRPC 8.4(d) (conduct prejudicial to the administration of justice).

2)    On October 26, 2001, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.1 (competence).

3)    On May 1, 2001, the Kansas Supreme Court issued an order to the respondent to show cause why his probation should not be revoked. The respondent appeared before the Kansas Supreme Court and established that he had taken steps to resolve the problems. The Court extended the respondent's probation for an additional three years.

4)    On April 18, 2003, the Kansas Supreme Court extended the respondent's probation for an additional five years for having violated KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 3.1 (meritorious claims and contentions), and KRPC 4.2 (represented party).

5)    On November 13, 2009, the Kansas Supreme Court discharged the respondent from probation.

6)    On April 3, 2018, the disciplinary administrator informally admonished the respondent for having violated KRPC 8.4(d) (conduct prejudicial to the administration of justice).

b.    *Dishonest or Selfish Motive*. The respondent provided false information to the court in C.Z.'s case when he told the court that a second expert witness designation was necessary because Mr. Horton was not available. The respondent's misconduct in this regard was motivated by dishonesty.

c.    *A Pattern of Misconduct*. The respondent failed to appear in court twice and repeatedly failed to timely comply with deadlines in both cases. As such, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

d.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.3

20

(diligence), KRPC 3.4(c) (disobey obligation), KRPC 3.4(d) (discovery), KRPC 8.4(c) (dishonest conduct), and KRPC 8.4(d) (conduct prejudicial to the administration of justice). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

e.    *Vulnerability of Victim*. C.Z. was vulnerable to the respondent's misconduct.

f.    *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1982. At the time of the misconduct, the respondent had been practicing law for more than 30 years.

"86.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*.  During the period of time when the respondent engaged in the misconduct, the respondent's father became ill. The respondent provided care for his father until his father's death. The respondent's personal situation contributed to his misconduct.

b.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*.  The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts and several rule violations.

c.    *Remorse*.  At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

21

d. *Remoteness of Prior Offenses.* The discipline imposed in 2000 and 2001 is remote in time but not in character to the misconduct in this case.

"87. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

'6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

'6.22    Suspension is [generally] appropriate when a lawyer know[ingly] . . . violat[es] a court order or rule, and [there is] injury or potential injury to a client or a party, or [causes] interference or potential interference with a legal proceeding.

'7.2     Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.

'8.2     Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendations of the Parties*

"88.    The disciplinary administrator recommended that the respondent's license be indefinitely suspended. Counsel for the respondent recommended that the respondent's license be indefinitely suspended but that the suspension be suspended and that the respondent be placed on probation.

"*Consideration of Probation*

"89.    When a respondent requests probation, the hearing panel is required to consider Kan. Sup. Ct. R. 211(g)(3), which provides:

'(3)    The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of

23

probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)    the misconduct can be corrected by probation; and

(iv)    placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"90.     The respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint. The respondent put the proposed plan of probation into effect prior to the hearing on the formal complaint by complying with each of the terms and conditions of the probation plan.

"91.     However, some of the misconduct, in this case, cannot be corrected by probation. Specifically, dishonest conduct cannot be effectively supervised. *See In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ('Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.').

"92.     And, finally, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. The respondent

24

has an extensive disciplinary record. Specifically, the respondent spent nine years on probation for having violated many of the same rules the respondent violated in [t]his case. Any benefits to be gained by supervision should have already been realized. Accordingly, the hearing panel concludes that probation is not appropriate in this case.

"*Recommendation of the Hearing Panel*

"93.    Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license be indefinitely suspended.

"94.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2019 Kan. S. Ct. R. 257). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint to which he filed an answer. Respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2019 Kan. S. Ct. R. 261). Furthermore, the

25

facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.1 (2019 Kan. S. Ct. R. 295) (competence); 1.3 (2019 Kan. S. Ct. R. 298) (diligence); 3.4(d) (2019 Kan. S. Ct. R. 353) (failure to comply with discovery request); 8.4(c) (2019 Kan. S. Ct. R. 387) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice). The evidence also supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. The hearing panel unanimously recommended that respondent be suspended indefinitely from the practice of law. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator also recommended that the respondent be indefinitely suspended. The respondent requested indefinite suspension, that the suspension be stayed, and that respondent be placed on probation according to his proposed plan of probation.

Given the serious nature of the respondent's conduct underlying the allegations in this case coupled with his lengthy prior history of disciplinary offenses, we deny his request to be placed on probation in lieu of suspension. In particular, as pointed out by the Disciplinary Administrator at oral argument before this court and by the hearing panel, the misconduct in this case is not amenable to probation. Specifically, dishonest conduct cannot be effectively supervised. See *In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ("Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts."). We therefore adopt both the hearing panel's and the Disciplinary Administrator's recommendation of indefinite suspension and order that he be subject to a reinstatement hearing under Supreme Court 219 (2019 Kan. S. Ct. R. 270) before his suspension may be lifted.

26

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Thomas Caleb Boone be and he is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2019 Kan. S. Ct. R. 240) effective upon the date of filing of this opinion; that he not be granted probation; and that he undergo a reinstatement hearing under Rule 219(d).

IT IS FURTHER ORDERED that the respondent comply with Supreme Court Rule 218 (2019 Kan. S. Ct. R. 268).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

NUSS, C.J., and BEIER, J., not participating.
DANIEL CAHILL and STEVEN C. MONTGOMERY, District Judges, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Cahill and District Judge Montgomery were appointed to hear case No. 120,744 vice Chief Justice Nuss and Justice Beier respectively under the authority vested in the Supreme Court by K.S.A. 20-2616 and by art. 3, § 6(f) of the Kansas Constitution.