IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 128,447

In the Matter of THOMAS C. MCDOWELL,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held April 2, 2025. Opinion filed August 8, 2025. Indefinite suspension.

*Amanda G. Voth*, Deputy Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*Michael J. Studtmann*, of Law Offices of Michael J. Studtmann, P.A., of Wichita, argued the cause, and *Thomas C. McDowell*, respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against Thomas C. McDowell, of Newton. McDowell received his license to practice law in Kansas in April 1992.

On May 16, 2024, the Disciplinary Administrator's office filed a formal complaint against McDowell alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent answered the formal complaint on June 13, 2024. On September 10, 2024, respondent entered into a joint agreement with the Disciplinary Administrator's office stipulating to violations of KRPC 1.1 (competence) (2025 Kan. S. Ct. R. at 320), KRPC 1.5 (fees) (2025 Kan. S. Ct. R. at 326), KRPC 1.7 (conflict) (2025 Kan. S. Ct. R. at 335), KRPC 3.2 (expediting litigation) (2025 Kan. S. Ct. R. at 382), KRPC 3.3 (candor toward the tribunal) (2025 Kan. S. Ct. R. at 383), and KRPC 8.4 (misconduct) (2025 Kan. S. Ct. R. at 426).

1

Respondent personally appeared and was represented by counsel at the complaint hearing before a panel of the Kansas Board for Discipline of Attorneys, which was conducted on September 24, 2024. After the hearing, the panel determined that respondent had violated KRPC 1.1, KRPC 1.5, KRPC 1.7(a), KRPC 3.2, KRPC 3.3, and KRPC 8.4(c) and (d). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

. . . .

"9.     A.L. and J.L. married in 1957 and had four children, including K.L. K.L. lived in Kansas in a home owned by his parents. He did substantial repairs and remodels to the property in the approximately 22 years he lived there.

"10.     Eventually, J.L. and A.L. each developed serious medical problems, with A.L. being diagnosed with lung cancer and, later, brain cancer.

"11.     Despite A.L.'s serious illness, J.L. expected A.L. to care for him. A.L.'s caregivers informed K.L. that the overwork from caring for J.L. could kill A.L.

"12.     A.L. moved in with K.L. in July 2017. K.L. testified that around this time, A.L. met with the respondent about possibly divorcing J.L. K.L. further testified that he put his mother and the respondent in contact because the respondent had represented him in the past and knew the family's history.

"13.     A.L. filed for divorce in April 2018. The respondent represented her in this matter.

2

"14.     In addition to filing the divorce action, the respondent also prepared an updated will for A.L. in April 2018. The will nominated K.L. to serve as her representative. It left A.L.'s 2002 Mazda Tribute, interest in the house where K.L. lived, and IRA account to K.L. The rest of A.L.'s property would be divided equally among the children.

"15.     The respondent told K.L. and A.L. to safeguard the original will somewhere like a safe deposit box, which they did.

"16.     A.L.'s health deteriorated, leading the respondent to file a motion requesting an order for emergency divorce in May 2018. The district court granted the divorce on June 11, 2018 but bifurcated the proceedings to later rule on property division.

"17.     A.L. passed away on June 22, 2018. In September 2018, the respondent filed a petition for probate in Sedgwick County.

"18.     The petition identified A.L.'s April 2018 will as controlling and stated that it had been filed with the petition. It requested the will be admitted to probate and K.L. be named as executor.

"19.     The will was not attached to the petition or filed with the district court.

"20.     In October 2018, the respondent filed a notice of hearing and notice to creditors. The notice again stated that the will had been filed with the petition to be admitted to probate, but the will had not been filed.

"21.     K.L.'s sister, K.H., retained counsel. Counsel filed written defenses and objections to the probate of the will on October 30, 2018. In that document, K.H. pointed out that a properly executed will had not been filed with the court or provided by any of A.L.'s heirs. K.H. attached A.L.'s will from 1982 to the pleading.

3

"22.     The day before K.H.'s filing, the respondent's legal assistant sent J.L.'s attorney a copy of A.L.'s April 2018 will. Despite being copied on this email, the respondent did not file the will.

"23.     On November 6, 2018, K.L. emailed the respondent's legal assistant. There, he asked about K.H.'s written defenses, saying: 'The motions present that we did not file a death certificate or [mom's] will to the court in a timely manner so therefor[e] it is invalid. Is that the case?'

"24.     The respondent told K.L. that there had been no issue filing the will.

"25.     K.S.A. 59-616 provides that no will is effective unless admitted to probate, and K.S.A. 59-617 requires that a petition for probate of the will be filed within six months of the testator's death. Both K.S.A. 59-2220 and a local administrative rule in Sedgwick County require that the will be filed with the petition if it can be produced.

"26.     Because A.L. died on June 22, 2018, her will had to be admitted to probate by December 22, 2018.

"27.     The district court continued the probate case multiple times. In December 2019, the respondent retained counsel in the matter. Through counsel, the respondent filed a pleading asking that K.L. be appointed as special administrator, with the respondent as an alternative administrator.

"28.     A few days later, the respondent's counsel also filed A.L.'s 2018 will with the district court. This first filing occurred about 18 months after A.L. died, or a year after the statutory deadline in K.S.A. 59-617.

"29.     K.L. did not provide this copy of the will to the respondent's counsel, meaning that the respondent provided it.

"30.     K.L.'s siblings and father objected to either K.L. or the respondent serving as the representative or administrator of the estate.

4

"31.    The district court held a hearing on January 8, 2020 in which the parties discussed A.L.'s 2018 will. K.L.'s siblings objected to the will being admitted to probate outside the six-month statute of limitations. The respondent's counsel informed the district court that the respondent electronically filed the petition but then hand-delivered the will to the clerk's office. Counsel suggested that there had been an 'electronic glitch.' The district court ruled that while it believed the statutory time period had run, it would allow the parties to set a hearing to put on evidence about whether the clerk's office lost the will.

"32.    The respondent's counsel contacted the clerk's office, which advised her that it only had the copy of A.L.'s will that had been filed in December 2019.

"33.    The respondent told K.L. that he did not need to attend the January 8 hearing. After the hearing, the respondent called K.L. 'in a complete panic' about the unfiled will.

"34.    The respondent and K.L. spoke again on January 9, and the respondent asked K.L. to come for an in-person meeting. At the meeting, the respondent provided K.L. with a written list of discussion topics. The list suggested that the attorneys representing K.L.'s sister and father had 'tapped or cloned' either K.L.'s or the respondent's phone. The list also advised that K.L. needed to be careful what he discussed with the respondent on the phone or in email, and it suggested they 'have discussions about sensitive information in person and in private.'

"35.    The list also referenced K.S.A. 59-618. This statute permits an innocent beneficiary to a will to admit that will to probate after the six-month statute of limitations expires. Notably, however, this exception is only applicable when someone has knowingly withheld the will from the district court. The person who withheld the will 'shall be liable for reasonable attorneys fees, costs and all damages sustained by beneficiaries' who did not have possession, knowledge, or access to the will. The respondent provided K.L. a copy of this statute along with two others.

"36.     In the list, the respondent wrote that this exception may apply because K.L. believed 'that the original will was to be kept away from anyone who is not an heir of [his] mother and [he] believed that if [he] took it out of [its] hiding place, [his] father may attempt to steal or destroy it.' The respondent further wrote that K.L. mistakenly believed that when the respondent told him to put the will in a safe place, he 'believed that it meant that he needed to do that forever.'

"37.     The respondent did warn that if they raised this argument, K.H.'s attorney would likely argue that K.L. withheld the will from the district court.

"38.     When they met on January 9, the respondent blamed K.L. for the issue with A.L.'s will. He also told K.L. that electronic filing 'set[] people up for failure' because it still required wills to be hand-delivered to the clerk's office. The respondent insisted that they needed to try and admit the will under K.S.A. 59-618, but he reiterated that K.H.'s attorney would argue that K.L. knowingly withheld the will.

"39.     K.L. told the respondent at the meeting that he did not know that the original will needed to be filed. He left the meeting feeling that the respondent blamed him for 'hiding' the will even though he had only put it in the safe deposit box because the respondent instructed him to.

"40.     The respondent filed A.L.'s original will with the district court for the first time on February 13, 2020.

"41.     The respondent also filed a petition to admit the will. In the petition, he argued that he only needed to deliver the will after the district court ordered him to and that the timely filing of the first petition stayed the six-month time limitation.

"42.     The petition also included alternative argument that K.L. had innocently withheld the will from the district court after misunderstanding the respondent's instructions. This argument, written in the style of an affidavit, was signed by K.L.

6

"43.     This alternative argument stated that the respondent told K.L. that he had provided the original will to probate, only to have K.L. correct him and reveal that he still had A.L.'s original will, which he believed he needed to safeguard 'forever.' K.L. asked that the district court find him to be an innocent beneficiary, as he knowingly withheld the will under the 'mistaken belief' that he needed to keep it safe forever.

"44.     The statements in this alternative argument, signed by K.L., were not true.

"45.     In February 2020, the respondent's counsel moved to withdraw based on allegations of a conflict of interest.

"46.     Later, in November 2020, K.H.'s counsel filed a petition for judgment on the pleadings or summary judgment.

"47.     In January 2021, K.L. emailed the respondent about the case. In this email, he blamed the 'issue with the late filing of [A.L.'s] will' on the respondent and said the respondent 'left [him] to be beaten repeatedly.' K.L. further said that the respondent was so concerned about his personal issues in the case and the ramifications his error might have on his law practice that he did not appreciate 'the price [K.L.] will pay if [A.L.'s] will is not admitted.'

"48.     The district court held a hearing in the probate case on February 26, 2021. There, it concluded that K.L. did not constitute an innocent beneficiary under K.S.A. 59-618. The district court reasoned that the will could have been produced at any time, and because it was not admitted to probate within the statutory time limit, it would be excluded.

"49.     Shortly after that hearing, the attorney representing K.L. in J.L.'s estate case referred K.L. to another attorney for advice on potentially bringing a malpractice claim against the respondent. The respondent later testified that he had specifically asked K.L.'s other counsel to refer him to a malpractice attorney.

"50.     K.L. obtained counsel for a malpractice case, and that attorney filed suit against the respondent in April 2021. The suit alleged that the respondent's negligence in failing to timely file A.L.'s will resulted in harm to K.L. The same day that counsel filed the lawsuit, she also received information that the respondent did not have malpractice insurance. The respondent was never served with the lawsuit, and K.L.'s counsel moved to dismiss the case in October 2021.

"51.     Around the same time as the malpractice suit, the respondent moved the district court to amend its journal entry concerning the will to permit him to file an interlocutory appeal on the issue. The district court made the amendment, and the respondent filed an appeal.

"52.     In May 2021, K.H.'s counsel filed an amended petition for attorney fees and expenses and requested that the respondent's request for attorney fees be denied by the district court.

"53.     K.L.'s relationship with the respondent continued to sour. In July 2021, K.L. emailed the respondent and accused him of throwing K.L. 'under the bus' by blaming K.L. for his malpractice. He stated that the respondent did not 'care what [his] mistake cost [K.L.].' A few months later, in October, K.L. again emailed the respondent. There, he said the respondent 'sacrifice[d]' and 'abuse[d]' him through the probate case, as well as in filings and their meetings. He wrote: 'I cannot allow you to sacrifice me to carry the burden of your mistake.'

"54.     K.L. fired the respondent on November 5, 2021. The respondent filed a motion to withdraw on November 11.

"55.     In addition to filing his motion, the respondent sent a letter to K.L. on November 11. With the letter, he explained that he planned on filing an attorney lien in the amount of $82,449.81. The respondent wrote that K.L. could settle the case for $30,000, thereby reducing the attorney fees by over $52,000. The respondent also stated that he would have withdrawn from the probate case even if K.L. had not fired him, as K.L. had failed to pay him and abandoned the appeal.

8

"56.    In late November 2021, K.L. and his siblings reached a settlement in the probate matter. K.L. received the house and the vehicle, as well as certain lottery winnings and annuity distributions that K.L. had previously obtained. The settlement excluded him from inheriting anything else from either A.L. or J.L., who had also passed away.

"57.    The respondent filed a petition for partial payment of attorney fees and a notice of attorney fee lien against the proceeds of the probate case in December 2021. He requested that the court order payment of the full $82,449.81.

"58.    Without counsel, K.L. filed a petition objecting to the attorney fee lien in January 2022. There, K.L. asserted that the respondent's conduct in the probate case was self-serving, malicious, and not done in good faith. Particularly, he stated that the respondent 'continually misled this court to cover his own mistake and sacrifice his client.'

"59.    K.L. further wrote that the respondent threatened to withdraw from the case if K.L. did not adopt his version of events. When K.L. tried to fire the respondent in the past, the respondent 'stated that [K.L.] had to pay him every dime [he] owed to fire him.' Finally, K.L. wrote that the respondent told him that no one would pursue a malpractice case against him because he did not have insurance.

"60.    While the motions regarding attorney fees were pending, the Kansas Court of Appeals affirmed the district court's rulings regarding A.L.'s will. Particularly, the court noted K.L.'s changing justifications for failing to admit the will to probate and observed that '[n]othing in the record reflects the will could not have been produced and timely filed.' The court agreed that K.L. did not constitute an innocent beneficiary.

"61.    On September 8, 2022, the district court held a hearing on the attorney fee issue.

"62.    Before the district court ruled, the respondent filed a response to a petition for fees and sanctions K.H. had filed. There, the respondent admitted that he was 'unaware of any legal necessity requiring the filing of the will with the [p]etition.' He

9

acknowledged that attempting to admit the will under K.S.A. 59-618 was not a viable argument, but he denied 'any willful conduct' apart from K.L. keeping the will in a safe deposit box when it needed to be filed with the court.

"63. The district court issued a ruling on the issue of attorney fees on November 10, 2022 in which the judge repeatedly found that the respondent did not adequately or appropriately represent K.L. Particularly, the district court found that the respondent 'greatly increased' the time and labor required in the probate case, caused the estate to incur additional expenses by hiring counsel to represent him, and 'knew or should have known' that counsel's assertion that the respondent had filed the will with the clerk was untrue.

"64. The district court further wrote that many of the respondent's actions, including having K.L. 'sign an affidavit that placed [him] in potential legal jeopardy,' constituted 'an attempt to either avoid responsibility for his failure to file the [w]ill timely or in a failed attempt to get the [w]ill filed.' The district court also stated that the appeal on this issue 'bordered on frivolous.'

"65. Ultimately, the district court found that the respondent 'made representations to the court and counsel that he knew or should have known were not true. He pursued claims contrary to established law. He put his client in legal jeopardy through an affidavit.' This conduct led the district court to find that 'many if not most all of [the respondent's] actions after the initial filing were not done in good faith.' The district court called the respondent's conduct willful and 'part of a 4-year pattern of behavior.'

"66. Further, the district court indicated that a potential conflict of interest had arisen between the respondent and K.L. and worsened over time. The district court wrote: 'At some points in the representation it became confusing whether [the respondent] was representing his client's interests or attempting to cover for his own mistakes such as when he hired an attorney to represent himself.'

"67. The district court denied the attorney fee lien, ordered it released, and sanctioned the respondent $60,961.80.

10

"68.    The district court forwarded its order to the ODA, which treated it as a complaint. K.L. also filed a complaint against the respondent. In his complaint, K.L. wrote that the respondent isolated, lied to, blackmailed, and verbally abused him.

"69.    In his attorney responses, the respondent agreed with the district court's assessments of his 'failings' in the probate matter. He admitted that he did not know he needed to attach the will to the petition for probate, and he acknowledged that his appeal 'did not have merit.'

"70.    The parties stipulated that the respondent's conduct violated KRPC 1.1 (competence); KRPC 1.5 (fees); KRPC 1.7 (conflicts); KRPC 3.2 (expediting litigation); KRPC 3.3 (candor toward the tribunal); and KRPC 8.4 (misconduct).

"71.    During the formal hearing, K.L. testified at length about the harm caused by the respondent's conduct. As previously stated, K.L. chose the respondent to represent his mother in her divorce because of their past relationship. He hired the respondent to represent him in the probate matter because he trusted him and considered him a friend.

"72.    K.L. testified that by the time the representation ended, K.L. no longer trusted the respondent. K.L. believed the respondent placed all of the blame on him. K.L. further testified that the respondent allowed K.L.'s character to be destroyed to protect his own reputation.

"73.    K.L. described the respondent's conduct during the representation as emotional abuse. The respondent would tell K.L. that he needed to adopt certain positions in the case to keep A.L.'s wishes from dying.

"74.    Further, K.L[.] testified that the respondent never took accountability for his actions or apologized. K.L. believed the respondent behaved maliciously. He testified that he thinks the respondent should be disbarred.

11

"75.    In addition to this emotional harm, K.L[.] suffered serious financial harm. The full value of the property owned by A.L. and J.L. at their deaths was disputed by the parties throughout the proceedings. At the formal hearing, K.L. estimated their combined estates to be worth approximately $900,000 to $1,000,000, but he admitted that they might be worth closer to $750,000 or $800,000.

"76.    Depending on the value of the estates, K.L. would have received between $273,500 and $310,000 had A.L.'s will been admitted to probate, as he would have received the property she left directly to him, one-fourth of her remaining estate, and one-fourth of J.L.'s estate when he died.

"77.    Instead, K.L. lost the right to receive his one-fourth share of both A.L.'s remaining estate and J.L.'s estate in the settlement. The property he received was worth approximately $155,000.

"78.    Based on those figures, K.L. estimated that he received between $118,000 and $155,000 less from his parents' estates because of the respondent's actions.

"79.    Further, K.L. testified that because the respondent did not have malpractice insurance, he realistically could not bring a malpractice suit against the respondent.

"80.    Dr. Lance Parker, a licensed psychologist who worked with the respondent for several weeks, testified for the respondent. Dr. Parker testified that the respondent suffered from adjustment disorder with anxiety relating to the probate case and resulting disciplinary matter.

"81.    The respondent and Dr. Parker worked on cognitive restructuring skills to assist the respondent with approaching situations more assertively and not dwelling on past events. Over time, Dr. Parker saw significant improvements in the respondent's mood, attitude, and demeanor.

12

"82.    After eight sessions, Dr. Parker determined that the respondent had received the maximum clinical benefit from their time together and discharged him. Dr. Parker did note that he would be available to the respondent for more sessions if needed.

"83.    The respondent testified regarding his experience and current practice. The respondent explained that he had drafted many estate plans, but at the time he took K.L.'s case, he had only admitted one other will to probate. His probate experience was primarily adoptions, although he had also done about ten estate administrations.

"84.    Since K.L.'s case, the respondent moved his practice to Newton, Kansas. He now works with attorney Steve Johnson at Cornerstone Law. Mr. Johnson has significant probate law experience, which the respondent testified has helped him become more competent in that field. The respondent intends to keep practicing with Mr. Johnson.

"85.    Regarding A.L.'s will, the respondent presented inconsistent testimony about whether he believed he filed the will with the petition. Initially, he testified that he did not realize at the time he filed the petition that he needed to file the will with it. He believed that filing the petition would be sufficient. He also did not know that a local court rule required that he electronically file the will with the petition.

"86.    Later, though, the respondent testified that he believed the clerk's office might have had the will at the time his counsel represented the same to the district court. He indicated that his legal assistant told him that the will might have been hand delivered there.

"87.    The respondent denied that K.L. told him that he had retained the original will before the hearing in January 2020. That said, the respondent admitted to providing A.L. the original will.

"88.    The respondent denied that his counsel's statement about the will being given to the clerk's office in January 2020 was intentionally misleading. He stated that at the time of the statement, he did not know K.L. had the will.

13

"89.    To the extent that the respondent's testimony on this issue is inconsistent with the filed stipulation, the hearing panel credits the stipulation over the respondent's testimony on these points.

"90.    The respondent presented similarly inconsistent testimony regarding the innocent beneficiary theory he asserted at the district court. The respondent testified that he did not realize K.L. had the original will or that he believed he needed to safeguard it until K.L. told him in January 2020. He denied that K.L. told him he had the will in November 2018.

"91.    Later, he admitted both to giving the original will to A.L. and K.L. and to instructing K.L. to keep it safe. He similarly acknowledged to having a copy of the will. The respondent testified that he believed that because he had filed the petition, the location of the will did not matter.

"92.    The respondent acknowledged that he never asked K.L. for the original will when initiating the probate matter.

"93.    Further, the respondent testified that he abandoned the innocent beneficiary argument when it no longer fit the case, but he also admitted to continuing to reference K.L.'s alleged willful withholding of the will in court filings in 2022. The respondent also admitted that the affidavit K.L. signed about withholding the will was not in his best interest.

"94.    The respondent also asserted during testimony that the district court erred in finding that he did not act in good faith. He stated that his arguments advocated for a good-faith modification of the law.

"95.    To the extent that the respondent's testimony on this issue is inconsistent with the filed stipulation, the hearing panel credits the stipulation over the respondent's testimony on these points.

14

"96.     The respondent filed a proposed probation plan prior to the hearing. The probation plan's primary requirements were that the respondent: (1) attend additional CLE on estate planning, probate, and ethics; (2) provide the ODA with updates regarding his treatment with Dr. Parker; (3) explain in writing how he could have avoided the issues that occurred in K.L.'s case; (4) send a letter of apology to K.L.; (5) attend any required meetings with the ODA; and (6) not violate the rules of professional conduct going forward.

"97.     Like Dr. Parker, the respondent testified that he no longer attends counseling with Dr. Parker. He stated that he believed he had taken responsibility for his actions and changed his thinking.

"98.     Because the respondent's probation plan included a requirement that he write an explanation of how he could have avoided the issues present in K.L.'s case, Ms. Voth asked the respondent to articulate these steps during his testimony. The respondent testified generally that he had reviewed the relevant portions of the probate code (including statutory changes), better acquainted himself with electronic filing requirements, and implemented rules in his office to ensure he did not make the same mistakes again.

"99.     When discussing his violation of KRPC 1.5, the respondent testified he could avoid issues with fees by filing wills timely in the future. The respondent admitted that the estate incurred additional fees because of his actions, but he also defended his fees by saying that he kept track of the time he spent on K.L.'s case and only charged him for legitimate work. He also stated that the fees he created when trying to correct his mistake with the will had been incurred at K.L.'s behest.

"100.     Similarly, when discussing his violation of KRPC 1.7, the respondent testified that he did not believe he had a conflict in the months before K.L. fired him. He stated that he could have avoided the violation by withdrawing from the case. Later, the respondent acknowledged to stipulating that it became confusing whether he was representing his client's interests or his own in court.

15

"101.     When discussing the violation of KRPC 3.3, the respondent acknowledged that his counsel's statement about the clerk's office having the will violated the rule, but he also testified that he did not know whether the clerk had the will. He said that he did not know for certain that K.L. had the will until after that hearing.

"102.     The respondent also asserted that any false representation to the court was unintentional, despite stipulating to knowingly providing false information to the court. He did admit, however, that he should have been clearer with the district court that he did not know the will's location. To the extent this testimony conflicts with the stipulation, the hearing panel credits the stipulation over the respondent's testimony on this issue.

"103.     The respondent testified that he had not yet written a letter of apology to K.L.

"104.     As for the meetings required by his probation plan, the respondent testified that he attended ethics programs put on by the ODA and KALAP. He also planned on attending more ethics programs in the future.

"105.     The respondent testified that the measurable goals in the probation plan were him not violating any more rules and continuing his legal education.

"106.     The respondent acknowledged that his probation plan did not include supervision by another attorney. He testified that Steve Johnson could probably serve as his practice supervisor. The respondent did not indicate whether he and Mr. Johnson had spoken about this possibility or whether Mr. Johnson knew about the proposed probation plan.

"107.     Ultimately, the respondent testified that he wanted to keep practicing law to help people. He also testified that he would make sure he is competent in all future cases.

16

"108.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.5 (fees), KRPC 1.7 (conflicts of interest), KRPC 3.2 (expediting litigation), KRPC 3.3 (candor toward the tribunal), and KRPC 8.4 (professional misconduct), as detailed below.

## "KRPC 1.1

"109.    Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' *Id*. The respondent lacked the requisite legal knowledge, skill, thoroughness, and preparation to represent K.L. in the probate case because he failed to acquaint himself with the applicable statute of limitations. The respondent had little experience in admitting wills to probate, and he incorrectly assumed that filing the petition was sufficient to admit A.L.'s will. This assumption was inconsistent with both state statute and local rule. His failure to attach the will as required by law (and as indicated in the petition), coupled with his continued failure to correct the error after K.L. and opposing counsel both raised the issue, prevented the will from being admitted to probate. The hearing panel concludes that the respondent violated KRPC 1.1.

## "KRPC 1.5

"110.    KRPC 1.5 provides that '[a] lawyer's fee shall be reasonable.' Factors include the time and labor required for the matter, the novelty and difficulty of the questions involved, and the amount involved and results obtained. *See* KRPC 1.5(a)(1), (4). Admitting A.L.'s will to probate should have been a relatively straightforward matter. However, as the district court found in its order, the time and labor required to resolve the case was 'greatly increased' by the respondent's actions and inactions. Particularly, the district court found that the respondent 'made representations . . . that he knew or should have known were not true,' pursued remedies not permitted by Kansas law, and caused

17

unnecessary delay. Charging K.L. for the time he spent trying to correct his mistake is unreasonable. The hearing panel concludes that the respondent violated KRPC 1.5 by amassing more than $80,000 in fees.

"KRPC 1.7(a)

"111.    A lawyer has a concurrent conflict of interest if there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. KRPC 1.7(a). In this case, the conflict of interest arose when the respondent realized the severity of his failure to timely file A.L.'s will with the district court. The respondent became more concerned with protecting his own interests and reputation than advancing K.L.'s interests. This conflict is evident in the fact that the respondent encouraged K.L. to take responsibility for withholding the will even though, under K.S.A. 59-618, K.L. could be held liable for attorney fees and damages. By the time K.L. emailed the respondent in January 2021 about being blamed for the respondent's conduct, the respondent should have recognized the severity of this conflict. He did not, and he continued to protect his interests to the detriment of his client.

"112.    The district court observed the respondent's failure to recognize or ameliorate this conflict in its September 2022 order. There, the district court also observed: '[I]t became confusing whether [the respondent] was representing his client's interests or attempting to cover for his own mistakes.' The respondent stipulated to this confusion, but at the formal hearing, still failed to appreciate the way in which his personal interests limited his representation of K.L. As such, the hearing panel concludes that the respondent violated KRPC 1.7(a).

"KRPC 3.2

"113.    'A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.' KRPC 3.2. The respondent's failure to attach A.L.'s will to the petition, followed by his repeated attempts to cover up his mistake (including the interlocutory appeal), drastically delayed resolution of the probate matter. The hearing panel concludes that this conduct violated KRPC 3.2.

18

"KRPC 3.3

"114.    The foundation of the practice of law is truth. Attorneys must be honest in all they do, particularly in appearances before courts. 'A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.' KRPC 3.3(a)(1). The respondent stipulated to violating this rule when he allowed his counsel to inform the district court that A.L.'s will had been delivered to the clerk's office. Although the respondent downplayed this admission in his testimony, alternatively claiming that he believed the will had been delivered to the clerk's office and that he believed he did not need to file the will, the hearing panel credits his stipulation over his testimony. The respondent knew at the time of the hearing that the will had not been taken to the clerk's office. The hearing panel concludes that the respondent violated KRPC 3.3(a) when he permitted his attorney to make this statement without correction.

"KRPC 8.4(c)

"115.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). In addition to his lack of candor with the district court, the respondent engaged in conduct involving dishonesty when he drafted an affidavit letting K.L. take responsibility for concealing the will. Despite knowing that K.L. had not intentionally concealed or withheld the will, the respondent convinced K.L. to take responsibility for the respondent's failings. This strategy was dishonest, and it risked placing K.L. in legal jeopardy. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"116.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he continued to challenge the district court's rulings regarding A.L.'s will. The respondent raised arguments not to advance his client's interests but to conceal and correct the mistake

19

caused by his lack of competence. The respondent not only filed an appeal he later admitted lacked support and merit; he continued to defend his actions in motions and responses before the district court. These actions delayed resolution of the probate case and added to the time, expense, and resources expended by the judiciary and the other parties to the probate action. Therefore, the hearing panel finds the respondent violated KRPC 8.4(d).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"117.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"118.     *Duty Violated*. The respondent violated his duty to his client by failing to competently represent him and placing him in legal jeopardy by convincing him [to] take responsibility for the respondent's failings. He also charged his client an unreasonable fee, and he failed to recognize the conflict of interest created by his personal interest in the outcome of his litigation strategy. The respondent also violated his duty to the profession by including false assertions in court filings and by unreasonably prolonging the litigation.

"119.     *Mental State*. The respondent knowingly violated his duties. While the respondent's initial failure to file the will was negligent, his subsequent bad faith efforts to conceal and correct his negligence by blaming K.L. were knowing.

"120.     *Injury*. As a result of the respondent's misconduct, the respondent caused substantial injury to K.L. His failure to timely file the will reduced K.L.'s inheritance. K.L. ultimately did not receive all of the property and money that K.L.'s parents intended him to receive when preparing their respective estate plans.

20

"121.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel in this case found the following aggravating factors present:

"122.    *Prior Disciplinary Offenses*. The respondent has been previously disciplined on one occasion. He received a 12-month diversion for violating KRPC 1.15 in February 2020.

"123.    *Dishonest or Selfish Motive*. After the January 2020 hearing, the respondent repeatedly engaged in conduct calculated to conceal his failure to file A.L.'s will. He dishonestly blamed K.L. for withholding the will, and he continually filed court documents, including an appeal, advancing this untrue theory. He convinced K.L. to support these arguments in order to protect A.L.'s final wishes. But as the district court found, it is difficult to identify whether the respondent aimed to protect K.L.'s interests or his own. The hearing panel concludes that the respondent's motivation was selfish.

"124.    *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence); KRPC 1.5 (fees); KRPC 1.7 (conflicts of interest); KRPC 3.2 (expediting litigation); KRPC 3.3 (candor to the tribunal); and KRPC 8.4 (professional misconduct). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"125.    *Refusal to Acknowledge Wrongful Nature of Conduct*. The respondent stipulated to several rule violations. That said, his testimony at the hearing tended to downplay the wrongful nature of his conduct and the impact his actions had on K.L. The respondent continued to suggest that K.L. withheld the will and that K.L. bore at least some responsibility for some of the issues that arose after the respondent failed to file the will. This testimony is contradicted by both the joint stipulation and the evidence in the record. The hearing panel finds that the respondent does not fully appreciate the wrongful nature of his conduct or how he violated the rules.

"126.    *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1992. At the time of the misconduct, the respondent has been practicing law for more than 25 years.

"127.    *Indifference to Making Restitution*. The respondent failed to make restitution to K.L. for the substantial losses he sustained. The respondent's conduct led to a substantial reduction in the inheritance K.L. received from his parents' estates. At the time of the formal hearing, the respondent had not made any restitution to K.L. or apologized for his conduct.

"128.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"129.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"130.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent enjoys the respect of his . . . peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"131.    *Imposition of Other Penalties or Sanctions*. The district court sanctioned the respondent for his conduct, and the respondent has paid the sanction in full.

"132.    *Remoteness of Prior Offenses*. The misconduct which gave rise to the respondent's diversion in February 2020 is remote in character but not in time to the misconduct in this case. There, the respondent stipulated to violating KRPC 1.15

22

(safekeeping property). However, the conduct underlying the diversion occurred in 2018, and the respondent was on diversion during the time he committed some of the misconduct in this matter.

"133. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following standards:

'4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.'

'4.52 Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.'

'6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation of the Parties*

"134. The disciplinary administrator recommended that the respondent's license to practice law be suspended for two years and that the respondent be subject to a reinstatement hearing at the close of those two years.

23

"135.    The respondent recommended that he be placed on probation. He did not specify a length of underlying suspension.

"*Discussion*
"*Recommendation of the Hearing Panel*

"136.    When a respondent requests probation, the hearing panel is required to consider Rule 227, which provides:

'(d)  Restrictions on Recommendation of Probation. A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

'(1)  the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

'(2)  the misconduct can be corrected by probation; and

'(3)  placing the respondent on probation is in the best interests of the legal profession and the public.'

"137.    The hearing panel finds that probation is not appropriate because the respondent engaged in dishonest conduct. Probation is generally inappropriate in cases 'where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.' *In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013).

"138.    The hearing panel further finds that the respondent's proposed probation plan does not meet the requirements laid out in Rule 227. It is not workable, substantial, and detailed as required by Rule 227(a)(1), and it lacks adequate safeguards to address the misconduct committed in this case, protect the public, and ensure the respondent's continued compliance with the rules. KRPC 227(a)(2). The probation plan lacks measurable goals or concrete actions the respondent will take to correct the misconduct identified in this case. Apart from attending CLEs and writing a letter of apology, the only significant components of the probation plan are (1) an explanation as to how the

24

respondent could have avoided the instant misconduct and (2) continued compliance with the rules. The respondent has not identified a practice supervisor who will oversee and assist him with these requirements. Such a plan is insufficient under Rule 227.

"139. Further, the respondent's continued failure to take accountability for his actions—including the blame he continued to place on K.L. during his testimony—demonstrates that placing the respondent on probation is not in the best interests of the profession or public.

"140. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be suspended for two years. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Rule 232.

"141. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2025 Kan. S. Ct. R. at 275). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

"When a respondent does not take exception to a finding it is deemed admitted. But when an exception is taken, the panel's findings are not typically deemed admitted, so the court must determine whether the disputed findings are supported by clear and convincing evidence. In making this determination, the court does not weigh conflicting

25

evidence, assess witness credibility, or redetermine questions of fact. If a disputed finding is supported by clear and convincing evidence, it will not be disturbed. [Citations omitted.]" *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2017).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Prior to the hearing before the disciplinary panel, respondent entered into a joint agreement stipulating to violations of KRPC 1.1, KRPC 1.5, KRPC 1.7, KRPC 3.2, KRPC 3.3, and KRPC 8.4. No exceptions were filed in the case, and the findings of fact and conclusions of law in the hearing panel's final report are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2025 Kan. S. Ct. R. at 281). The evidence before the panel clearly and convincingly established that the charged misconduct violated KRPC 1.1 (competence), KRPC 1.5 (fees), KRPC 1.7(a) (conflict of interest), KRPC 3.2 (expediting litigation), KRPC 3.3 (candor toward the tribunal), and KRPC 8.4(c) and (d) (misconduct).

The only issue left for us to resolve is the appropriate discipline. The Disciplinary Administrator's office recommended that we suspend respondent's license to practice law for two years and that respondent be subject to a reinstatement hearing under Supreme Court Rule 232 (2025 Kan. S. Ct. R. at 286). The respondent recommended he be placed on probation. The hearing panel recommended that we suspend respondent's license to practice law for two years and that respondent undergo a hearing prior to reinstatement.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017). The court declines to follow the recommendations. *In re Long*, 315 Kan. 842, 853, 511 P.3d 952 (2022).

ABA Standards for Imposing Lawyer Sanctions sections 9.22 and 9.32 list aggravating and mitigating factors to be considered. Of these, the panel found that the following aggravating factors existed: respondent has a prior disciplinary offense; he has committed multiple offenses; his actions were dishonest, and his motive was selfish; he refused to acknowledge the wrongful nature of his conduct; he demonstrated an indifference to making restitution; and he has substantial experience in the practice of law. The panel also identified the following mitigating factors: the respondent fully cooperated with the disciplinary process and admitted the facts that gave rise to the violations; he generally possesses a good character and reputation among his peers; he has paid the sanction in full that was imposed by the district court; and respondent's prior misconduct was remote in character but not in time.

But respondent committed dishonest conduct over a period of four years. This dishonest conduct included committing fraud on the court and bullying his client into taking a position that exposed the client to liability. Moreover, respondent caused K.L. substantial harm and has *still* failed to make restitution. Therefore, we order that respondent's license be suspended indefinitely and that respondent undergo a reinstatement hearing under Rule 232 before his petition for reinstatement will be considered. Reinstatement is further conditioned on respondent making full restitution to K.L. of $155,000.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Thomas C. McDowell is suspended indefinitely from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(2) (2025 Kan. S. Ct. R. at 274) for violating KRPC 1.1, KRPC 1.5, KRPC 1.7, KRPC 3.2, KRPC 3.3, and KRPC 8.4.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2025 Kan. S. Ct. R. at 285) (notice to clients, opposing counsel, and courts following suspension or disbarment).

IT IS FURTHER ORDERED that if respondent applies for reinstatement, he shall comply with Supreme Court Rule 232 (2025 Kan. S. Ct. R. at 286) and be required to undergo a reinstatement hearing. A condition of reinstatement is making full restitution to K.L. of $155,000.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

WILSON, J., not participating.